ACKER v. WATKINS.

4-5708                                    134 S. W. 2d 526

Opinion delivered December 18, 1939.

B. E. Taylor, W. H. Gregory and R. W. Robins, for appellants.

Harry Neelly, C. E. Yingling, Jr., and C. E. Yingling, for appellees.

MEHAFFY, J. S. M. Acker died July 9, 1929, leaving his widow and three children, by a former marriage, surviving. His will provided that T. A. Watkins should act as executor and trustee for his widow and heirs, and that he should file proper bond with the probate court for the faithful performance of his duty. He filed an account current in the probate court of White county and the heirs appealed to the circuit court, where the finding of the probate court was approved and confirmed. The facts in that case are stated in the case of *Acker v. Watkins,* 193 Ark. 192, 100 S. W. 2d 78. This court reversed the judgment of the circuit court and remanded it with directions to the circuit court to restate the account, charging the executor with the amounts he paid on all unprobated claims and with all collections he made or should have made for the estate upon notes and rents from the real estate.

On remand of the case the circuit court restated the account, disallowing all credits to the executor where he had paid unprobated claims. Watkins then appealed to this court and the court affirmed the case, holding that the circuit court had properly denied the motion to transfer to equity, and entered judgment in accordance with the directions of the mandate. The second appeal is reported in 195 Ark. 203, 111 S. W. 2d 458, as *Watkins v. Acker.*

Thereafter the appellants instituted this action in White chancery court to cancel certain notes and a deed of trust executed by Watkins conveying to Wood, as trustee for the Bank of Searcy, the real estate owned by S. M. Acker, deceased, consisting of three dwelling houses in Searcy and a farm in White county, Arkansas.

There was a decree holding that the notes and mortgage were void and cancelling same. The executor, Watkins, who was president of the bank and in the actual management of same, had executed the notes and mortgage to obtain money to pay the claims that this court decided he could not take credit for. But the chancery court also held that Watkins was entitled to be subrogated to the rights of the several persons to whom the debts were owed and had been paid by Watkins, and decreed that Watkins was subrogated to the rights of said creditors and persons, and might take credit for the sum of $3,500, or so much thereof as he had not heretofore received credit for upon his account.

The chancery court also enjoined and restrained the appellants from collecting any rents due upon the real estate belonging to S. M. Acker, deceased, or from interfering with the collection thereof by Watkins, and empowered Watkins, the executor, and ordered him to collect the rents and to account therefor as provided by law.

The appellants objected to that part of the decree allowing Watkins the right of subrogation, and authorizing him to take credit for such sums as he had not already received credit for upon his account current thereafter filed. The objections of appellants were overruled, exceptions saved, and an appeal prayed and granted to this court.

The appellees objected to that part of the decree canceling the deed of trust and note, and their objections being overruled, excepted, and prayed an appeal to this court which was granted. The case is here on appeal on each of these propositions: First, Were the mortgage and note void? and Second, Were the appellees entitled to subrogation?

Watkins, who executed the note and mortgage, was executor and trustee under the will of Acker. He was also president and in the active management of the bank to which the mortgage was given.

The Supreme Court of Vermont said, in a case where the administrator executed a promissory note and mortgage to himself as administrator:

"The mortgage must be held invalid for want of contracting parties. A contract necessarily implies a concurrence of intention in two parties, one of whom promises something to the other, who, on his part accepts such promise. One person cannot by his promise confer a right against himself until the person to whom the promise is made has accepted the same. Until the concurrence of the two minds, there is no contract; there is merely an offer which the promisor may at any time retract. Chitty, Cont. 9, quoting Pothier Obl.

"It is essential to the validity of a deed that there be proper parties,—a person able to contract, and a person ab'e to be contracted with. *3 Washb. Real Prop.* 217.

"To uphold this mortgage, we must say that there may be two distinct persons in one; for in law the mortgagor and mortgagee are identical. The addition of the words 'executor of A. W. Gorham's estate' does not change the legal effect of the grant, which is to Meacham in his individual capacity." *Burditt* v. *Colburn,* 63 Vt. 231, 22 Atl. 572, 13 L. R. A. 676.

A person cannot contract with himself, there must be two or more parties. In the instant case there was not the meeting of any two minds, as required by law, but Watkins was both the borrower and the lender of the money. He borrowed it in his capacity as executor, and loaned it in his capacity as the manager of the bank.

The law applicable to executors and administrators with reference to this particular question is the same as the law applicable to public officers or to contracts affecting public service.

"As the efficiency of the public service is a matter of vital concern to the public, it is not surprising that agreements tending to injure such service should be regarded as being contrary to public policy. It is not necessary that actual fraud should be shown, for a contract which tends to the injury of the public service is void, although the parties entered into it honestly and proceeded under it in good faith. The courts do not inquire into the motives of the parties in the particular

case to ascertain whether they were corrupt or not, but stop when it is ascertained that the contract is one which is opposed to public policy. Nor is it necessary to show that any evil was in fact done by or through the contract. The purpose of the rule is to prevent persons from assuming a position where selfish motives may impel them to sacrifice the public good to private benefit. All agreements for pecuniary considerations to control the business operations of the government, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy without reference to the question whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements; and it closes the door to temptation by refusing them recognition in any of the courts of the country.'' 6 R. C. L. 730.

It is contended by the appellees that Watkins had authority under the will to mortgage the property of the estate. There is no such authority in the will. The will does not give him any authority to mortgage, but to sell under certain conditions. But if the will had given him authority to mortgage, he could not borrow money and mortgage to himself. Such a contract would be against public policy and void.

Watkins represented the estate as executor, and represented the bank as manager, and each had a right not only to the faithful service but to the best judgment of Watkins, and he could not lawfully make a contract as executor with himself as manager of the bank.

''An officer's duty is to give to the public service the full benefit of a disinterested judgment, and the utmost fidelity. Any agreement or understanding by which his judgment or duty conflicts with his private interest is corrupting in its tendency. . . . The law will not permit public servants to place themselves in a situation where they may be tempted to do wrong, and this is accomplished by holding all such employment, whether made directly or indirectly, utterly void.'' Mc-Lain v. Miller County, 180 Ark. 828, 23 S. W. 2d 264.

It is not necessary to decide whether the note and mortgage are void for want of contracting parties, for the note and mortgage are void for another reason. Section 180 of Pope's Digest provides that an executor or administrator may borrow money to pay obligations secured by liens against any real property belonging to the estate. The undisputed evidence in this case shows that there were no liens on the real property of the estate, and the executor, therefore, had no authority under the law to execute the note and mortgage.

When the first appeal was in this court, reported in *Acker* v. *Watkins,* 193 Ark. 192, 100 S. W. 2d 78, this court said that § 102 of Crawford & Moses' Digest requires that before any executor or administrator shall pay or allow any such debts, the same shall be sworn to as aforesaid, referring of course to §§100 and 101. The sections of the statute referred to have, in a long line of decisions of this court, been construed to be mandatory. Numerous cases are cited to support that rule.

Section 102 of Crawford & Moses Digest is also § 102 of Pope's Digest.

The court in the above case, after holding that the section was mandatory, remanded the case with directions to the circuit court to restate the account charging the executor with the amounts he paid on unprobated claims, and with all collections he made, or should have made for the estate.

In the second appeal here, *Watkins* v. *Acker,* 195 Ark. 203, 111 S. W. 2d 458, the court, as we have said, held that the circuit court correctly refused to transfer the case to equity.

In the instant suit it is contended that even if the note and mortgage are void, the executor, having paid the claims, is entitled to subrogation, and the chancery court so held.

The statute expressly provides how claims shall be presented and probated, and the executor or administrator is prohibited from paying any claims that are

not presented and probated as the law provides. This court, as we have already said, held that § 102 of Pope's Digest is mandatory. In other words, the contention of the executor is that having paid the claims in violation of law, he is entitled to be subrogated to the rights of the creditors, whose claims he wrongfully paid.

Many authorities are cited by appellees on the question of Watkins' right of subrogation, which we deem it unnecessary to discuss, because, as contended by them, subrogation is an equitable doctrine, and the maxims of equity apply. No one can enforce subrogation to relieve him of his wrongful acts in paying claims, or otherwise.

Moreover, if this could be done in the instant case, then § 102 of Pope's Digest could be violated with impunity. If it were held that Watkins could be subrogated to the rights of the creditors in the instant case, then an executor or administrator could pay claims without the claimant complying with the law, and in absolute violation of the statute, and then go into a court of equity and get the claims allowed under the doctrine of subrogation, when the court has already decided that he cannot take credit in his settlement for these claims.

In other words, the executor claims that he can do indirectly what the law absolutely forbids his doing. Courts of equity are just as much bound by the law as courts of law are.

It follows from what we have said that, on the cross appeal, the decree of the chancellor declaring the notes and mortgage void is affirmed; and, on the appeal of the appellants, the decree of the chancery court holding that the executor, or bank, has a right of subrogation is reversed and the cause dismissed.