HOLT, TRUSTEE, *v.* CASSINELLI, ADMINISTRATRIX.

4-6708 160 S. W. 2d 877

Opinion delivered April 6, 1942.

---

*Barber, Henry & Thurman* and *Glenn F. Walther*, for appellant.

*O. D. Longstreth, E. B. Dillon* and *Philip McNemer,* for appellee.

GREENHAW, J. The question to be determined is whether the probate court erred in allowing the administratrix, in her final account and settlement, credit for various expense items incident to the burial of the deceased, which were paid by the administratrix without authentication by creditors. It is insisted such is required by §§ 101 and 102 of Pope's Digest.

Robert L. Cassinelli died intestate in September, 1938. His mother, Elizabeth A. Cassinelli, was his sole heir at law. His sister, Amelia Cassinelli, qualified as administratrix of his estate in November, 1938. Deceased was solvent and left an estate amounting to $2,737.49, which came into the hands of the administratrix. Appellee asked credit for $1,941.01 which she disbursed as such administratrix. Included in this amount was a total of $1,636.13 which she had paid out of said estate on ten separate items in connection with her brother's funeral.

Appellant, as trustee in bankruptcy of the estate of Elizabeth A. Cassinelli, filed exceptions to the final account of appellee, objecting to her receiving credit for the ten items of funeral expense, and asking that her account be surcharged therewith for the reasons above stated. The balance of the $1,941.01 for which she asked credit is not questioned.

A stipulation was entered into by attorneys for appellant and appellee, pertinent recitals of which are:

"6. That all items paid out by the administratrix, Amelia Cassinelli, from the assets of Robert L. Cassinelli's estate have been properly disposed of by court order except items 1, 2, 3, 4, 6, 7, 8, 9 and 10, set out in the objections, which were funeral expenses paid in good faith out of the assets of the estate and evidenced by receipt from persons to whom payment was made or by canceled check.

"7. Testimony is to be taken orally before the court as to item 5 and the objection thereto.

"9. That said Robert L. Cassinelli was of the Catholic faith and each and every item which was expended for his funeral was in accord with the practices of that faith and under the circumstances.

"10. That before incurring the expenses and paying the debts item by item, as above set out, Amelia Cassinelli had conferred with the then probate judge and was advised by him, orally, to make such expenditures.

"11. That the final report of Amelia Cassinelli was filed and sworn to, and filed with the receipts showing the payments.

"12. That all of the claims numbered 1 to 10, to the payment of which exceptions have been made, were paid in full, with money of the estate, by Amelia Cassinelli, administratrix, and that said claims were not exhibited and sworn to and notice was not given."

The evidence upon item 5 in the exceptions showed that this $500 item was for a one-fifth interest in a burial plot and appurtenances of the Cassinelli family in Calvary Cemetery, which is large enough for five graves, the major item being a "master" monument. The proof showed that the present value of the lot and improvements is about $2,500, and that perpetual care thereof had been paid for. The court allowed appellee only $250 therefor in her final account, gave appellant judgment against her as administratrix for $250 and costs of this action, and overruled appellant's exceptions to the other items set out in the exceptions, from which is this appeal.

Appellant contends that notwithstanding the challenged items were for funeral expenses, the filing of duly authenticated claims was a prerequisite to payment, and that since this was not done appellee should be required to refund to the estate the amount thereof. He cites and relies upon §§ 100, 101 and 102 and other sections of Pope's Digest, and also the case of *Watkins* v. *Acker*, which came to this court three times and is reported in the 193 Ark. 192, 100 S. W. 2d 78; 195 Ark. 203,

111 S. W. 2d 458 and 199 Ark. 573, 134 S. W. 2d 523, and the case of *Burns* v. *Wegman,* 200 Ark. 225, 138 S. W. 2d 389. Neither of these cases is applicable to the facts here.

In the Watkins case, 195 Ark. 203, 111 S. W. 2d 458, the disbursements made by the administrator for which duly authenticated claims were not filed were in payment of debts the deceased owed at the time of his death, as shown by the following finding of fact by the lower court: "Each and all of which said claims thus paid by the executor the court finds to have been owing by S. M. Acker at the time of his death, and remaining unpaid on the date of the payment thereof by said executor, the payment of which could have been enforced against said estate if same had been properly probated as required by law."

Neither is the Burns case in point. The question for determination there was priority of creditors. The widow, who paid her husband's funeral expenses within six months after his death, waited until more than six months after the appointment and qualification of the administrator to claim reimbursement, and her right to priority was challenged by other creditors. The question of an administrator's right to pay funeral expenses which he incurred was not involved, nor was the question of payment of funeral expenses without requiring the filing of duly authenticated statements.

In the case at bar there is no controversy between creditors on priority of claims, the estate of Robert L. Cassinelli having been fully solvent and all claims and funeral expenses having been paid. Appellant had no claim against the deceased, but seeks to recover for creditors of the mother.

We have concluded that the lower court did not err in overruling appellant's exceptions to items 1, 2, 3, 4, 6, 7, 8, 9 and 10, nor in disallowing credit of $250 only on item 5, being the $500 item for a cemetery lot.

Appellee contends that funeral expenses are generally treated as expenses incident to administration, and not such demands against an estate as were contemplated in § 100 of Pope's Digest. In Woerner on Administration,

vol. 2, p. 759, § 357, on the subject of ''The payment of liabilities arising after the death of the deceased,'' appears the following statement:

''In America, funeral expenses arc sometimes classified with the debts of the deceased and while they invariably take the first rank as debts, yet when so considered and treated they are necessarily postponed to expenses of administration. It is clear that if the executor voluntarily pays them, he must be allowed credit for the disbursement as expense incidental to the administration, because the funeral is a work of necessity as well as of charity and piety. Hence, it is the duty of the executor to bury the deceased in a manner suitable to the estate he leaves behind. Where this duty is performed by another, not officiously but under the necessity of the case, the law implies a promise to reimburse him for reasonable expenses paid. In this view, the propriety of distinguishing between funeral expenses as an incident of the administration, for which the executor or administrator who paid them is to be reimbursed in preference to any creditor of the deceased and such expenses as constituting a demand against the estate, provable against the executor, becomes apparent.''

In *Rainwater* v. *Harris,* 51 Ark. 401, 11 S. W. 583, 3 L. R. A. 845, this court said on page 408: ''Under our statute, executors and administrators stand upon the same footing, and their powers before probate are limited to the decent burial of the deceased, the preservation of his estate, and the payment of necessary funeral expenses.''

Mr. Justice HART, in the case of *Galloway* v. *Sewell,* 162 Ark. 627, 258 S. W. 655, classed expenses for tombstone with funeral expenses, and apparently treated funeral expenses which the executor had incurred and paid as expenses of administration. In that case it was said:

''A reading of the cases cited shows that it is quite generally held in the case of solvent estates that the necessary cost of a reasonable tombstone placed at the grave of a deceased person is properly classed as funeral

expenses, or expenses of administration, which may be allowed to an executor or administrator in settlement of his account."

In the case at bar it is conceded that the challenged items were funeral expenses incurred and paid for a solvent estate, not by a mere volunteer who acted officiously and without interest in the estate, but by the sister of the deceased, the administratrix of his estate. It is also conceded that she acted in good faith, after conferring with the then probate judge, and that her final account, to which the receipted bills or canceled checks were attached, was properly verified.

Affirmed.

SMITH, J. (dissenting). The majority opinion recites that the intestate left a solvent estate worth $2,237.49, and that his administratrix expended $1,636.13 of this money for funeral expenses. Ten items comprised these expenses, all of which were paid without requiring the claimants to comply with §§ 100, 101 and 102, Pope's Digest. The good faith of the administratrix is not questioned, but her authority is questioned.

Section 100, Pope's Digest, prescribes the "mode of exhibiting demands" against the estates of deceased persons. Section 101 provides the "form of affidavit" to be appended to such demands, and by § 102 it is provided that "before any executor or administrator shall pay or allow any such debt, the same shall be sworn to as aforesaid."

In the case of *Acker v. Watkins,* 193 Ark. 192, 100 S. W. 2d 78, it is said that "The sections of the statute referred to have, in a long line of decisions of this court, been construed to be mandatory," and a large number of cases so holding are cited. There is no case to the contrary.

It is not contended that there was any compliance with these mandatory statutes.

It appears that in some states funeral expenses are regarded as expenses of administration, and that in all of the other states where not so regarded they are preferred claims.

The subdivision of the chapter on Administration entitled "Allowance and Payment of Claims," §§ 93 to 117, Pope's Digest, determines very definitely that in this state funeral expenses are "demands against estates." Section 97, Pope's Digest, reads, in part, as follows: "Classification of demands. All demands against the estate of any deceased person shall be divided into the following classes.—First. Funeral expenses. Expenses of the last sickness, wages of servants, and demands for medicines, medical and surgical attention, nursing and hospitalization during the last illness."

Now, without inquiry, it may be conceded that all the ten items, totaling $1,636.13, were legitimate funeral expenses, but, even so, they were all demands against the estate, and should have been probated as required by the statute. They were not claims of the administrator against the intestate, but, if they were, § 96, Pope's Digest, would apply to him. That section reads as follows: "An executor or administrator may establish any demand he may have against his testator or intestate by presenting and proving the same to the satisfaction of the court, and the court shall not allow any claim in favor of an executor or administrator against his testator or intestate, unless on legal and competent testimony; and the same affidavit shall be required of an executor or administrator as is required of other claimants."

It was held in a subsequent appeal in the case of *Acker* v. *Watkins,* 199 Ark. 573, 134 S. W. 2d 523, that an executor could not, by paying claims without requiring their probate, dispense with the necessity of probating them by claiming subrogation in his settlement. It was there said that this could not be done because of the requirements of § 102, Pope's Digest.

It appears to Mr. Justice HOLT and this writer that the case of *Burns* v. *Wegman,* 200 Ark. 225, 138 S. W. 2d 389, is decisive of this case, and requires reversal of the judgment here appealed from. It was there said: "Appellees argue what they term the obvious difference between funeral expenses and liabilities incurred by the deceased during his lifetime. They insist that the statute

does not 'in terms' require that claims for funeral expenses, or those occasioned by the last illness, be exhibited to the administrator in order to preserve the priority given by law; that funeral expenses are contracts subsequent to death, and '. . . the administrator and everyone else knows that such indebtedness must be incurred, and notice thereof is unnecessary.' In support of this construction cases in foreign jurisdictions are cited. The argument must be rejected because it ignores the statutory rationale. By express language funeral expenses are made a first charge against a decedent's estate; but by lapse of time the preference may be lost. The legislative authority thought proper to create a fourth classification and to direct that all demands exhibited '. . . as aforesaid after six months and within one year after the first letters granted on the estate . . .' should comprise that group."

The case just cited very clearly holds that claims for funeral expenses are demands against the intestate's estate, and must be probated, and within six months after the issuance of letters of administration, otherwise they lose their priority, and it must follow that, as they must be probated, that action must be taken before the bar of the statute of nonclaim has fallen, otherwise they may not be paid at all. Here, the bar of the statute has fallen, and for this reason also the judgment of the chancery court, sitting in probate, should be reversed.

The majority do not appear to attach controlling importance to the fact recited in the stipulation "That before incurring the expenses and paying the debts, item by item, as above set out, Amelia Cassinelli had conferred with the then probate judge, and was advised by him orally to make such expenditures." To that stipulation we attach no importance. Argument will not be required to show that the probate judge was without power to dispense with the requirement of the law, which all the cases hold to be mandatory.

For the reasons stated, Mr. Justice HOLT and the writer dissent.