# CHARLESTON.

B. L. DRAPER AND W. H. DRAPER, *Partners Doing Business*
*as Draper Brothers, v.*

H. R. ANDERSON, *Division Engineer etc., and* C. P. FORTNEY
*et als., Members of the State Road Commission.*

(No. 5828)

Submitted October 13, 1926.   Decided November 23, 1926.

1. MANDAMUS—*Performance of Statutory Duty of Public Offi-*
   *cers, Not Involving Discretion or Judgment, May be En-*
   *forced by Mandamus.*

   The performance by public officials of a plain statutory
   duty, not involving the exercise of discretion or judgment on
   their part, may be enforced by the writ of mandamus.   (p.
   638.)

2. SAME—*Road Commission May be Compelled by Mandamus to*
   *Issue Requisitions on Auditor for Labor Under Contract*
   *With State (Code, c. 43, § 28).*

   Under Section 28, Chapter 43, Code, providing that any
   claim of contractors for labor done or material furnished to
   the State Road Commission pursuant to the provisions of the
   act shall be audited by the Commission, and if found to be
   correct, the Commission shall issue its requisition upon the
   auditor therefor, the Road Commission may be compelled by
   mandamus, at the instance of contractors in cases not in-
   volving a substantial controversy of fact, to issue a requisi-
   tion upon the auditor for labor performed by them in the
   construction of a State road under a contract with the State,
   by the Road Commission.   (p. 634.)

Original proceeding by B. L. Draper and another, co-part-
ners doing business as Draper Bros., for mandamus, to be
directed to H. R. Anderson, division engineer of the State
road commission, and others, members of the State road com-
mission.

*Writ awarded.*

*Bernard McClaugherty* and *Henry S. Cato,* for relators.
*Howard B. Lee,* Attorney General, and *R. Dennis Steed,*
Assistant Attorney General, for respondents.

LITZ, PRESIDENT:

The petitioners seek a peremptory writ of mandamus compelling the respondent H. R. Anderson, as division engineer of the State Road Commission, to certify to the respondents C. P. Fortney, C. E. Hiner, and C. E. McCoy, as members of and constituting the said State Road Commission, a true and final estimate of the work performed by petitioners under a contract for the construction of a certain State road; and compelling the respondents C. P. Fortney, C. E. Hiner and C. E. McCoy, as members of and constituting the State Road Commission, upon the filing of such final estimate by the said H. R. Anderson, as division engineer aforesaid, to issue in accordance therewith a requisition upon the auditor for payment of the balance due the petitioners under said contract.

June 4, 1924, the petitioners entered into a written contract with the State, through the Road Commission, for the improvement by grading and draining of a public road in Monroe County known as the Wolf Creek-Sinks Grove Road, Project No. 137-B, and approximating 17,800 feet in length, at the unit price, for unclassified excavation, of $.95 per cubic yard.

The work, having been completed b ypetitioners, about January 1st, 1926, was accepted by the State Road Commission June 16, 1926, as fully complying with the terms of the contract.

The petitioners allege that in the proper performance of the work, as directed by the engineers representing the Road Commission, they removed 112,106 cubic yards of unclassified excavation.

After the completion of the work the respondent, H. R. Anderson, as division engineer, certified to the Road Commission 92,242 yards of unclassified excavation as the true and final estimate of material removed by the petitioners under the contract. Upon complaint of the petitioners, the Road Commission increased the final estimate to 96,514 cubic yards, but refused further relief upon the ground that the yardage within the grade and slope lines of the original specifications, incorporated in the contract, did not exceed the quantity

allowed. The yardage in question falls within two general classifications: (1) material removed below the original grade line; and (2) breakage beyond the slope line of the original specifications.

Practically all of the excavation being through rock of irregular formation, commonly called "bastard limestone", it was necessary in obtaining a smooth grade to excavate below the grade line of the original specifications. The respondent, C. P. Fortney, concedes the fact in his testimony, and gives as the only reason for disallowing this item:

> "The ruling of the Commission has been more or less uniformly that the line as shown on the plans for grades is the pay line. There has been— I don't know whether you want it in the records or not. Several cases of this have come up. There have been three cases come up."

Numerous witnesses testified that it was necessary in the proper performance of the work to excavate, as was done, below the grade, in accordance with the grade stakes set by the engineers representing the Road Commission, some of which, attesting the fact, are still in existence.

The theory advanced by some of the engineers of the Road Commission that the breakage was due to shooting beyond the slope line, or the use of too heavy charges, is not supported by substantial proof.

It is charged the refusal of Anderson to certify the actual yardage removed by the petitioners under the contract was due to his personal animosity against petitioners engendered by a controversy between the petitioner Harry Draper and J. P. West, one of the engineers employed by the Commission, resulting in a physical encounter in which Draper struck West with his fist. Following this incident, Anderson, without authority under the contract, compelled the removal of Harry Draper from the job, at great expense to the partnership in employment of another person to take his place. Immediately after the difficulty between West and Harry Draper Anderson sent the petitioners a letter, dated April 18, 1925, stating:

"The unnecessary occurrence of yesterday will make it necessary for Mr. Harry Draper to be removed from this construction work at once. Until he has gone, no estimate will be allowed and any work done will not be paid for. Only a reasonable length of time will be allowed for the removal of this man, after which, if he has not gone, we will proceed to take the necessary steps to complete this project. I shall personally back Mr. West in any legal action that he decides to take in this matter.''

On May 30, 1925, West wrote Anderson:

"On April 18, 1925, you wrote a letter to Draper Brothers requesting the removal of Mr. Harry Draper from the construction work. You also stated that no estimate would be paid until he was gone. They have ignored your letter and interview held in your office, as he is still working on this project. On May 27th Harry Draper was still active in running the project, as he took Mr. Brewster and myself over the project. When Draper Brothers returned from Charleston they reported that no action had been taken at the office regarding the matter, and their actions bear their remarks out. If you think advisable, I request holding up this estimate until they make some explanations on their attitude.''

As further evidence of the alleged ill feeling of H. R. Anderson for respondents on account of the altercation between Harry Draper and West, it is claimed that in order to injure the petitioners and hamper them in the successful prosecution of the contract, he consistently refused thereafter during the progress of the work to furnish fair monthly estimates at proper times; and in order to prevent the petitioners from bidding on other State road projects unreasonably delayed furnishing them with any final estimates. The latter part of this charge is borne out by the testimony of Attorney General Lee, who states that he saw Anderson a short while before the letting of State road contracts in the early part of March, 1926, at the solicitation of the petition-

ers, for the purpose of requesting him on their behalf to furnish them a final estimate of the contract under consideration, in order that they might be enabled to bid on new work; that Anderson on that occasion displayed an unfriendly attitude toward the petitioners, and stated that ''He was not going to allow them an estimate in order that they might bid, and that if he could prevent it, they should never have another contract in his division'', giving as the only reason for his position the unfortunate occurrence between West and Harry Draper.

But whether or not for improper motives Anderson failed to furnish the petitioners fair monthly estimates and a correct final estimate, need not be determined in reaching a proper decision of the case. Suffice it to say that sufficient reason for his refusal to furnish a final estimate covering the amount of material excavated and removed by the petitioners in the performance of the contract is not shown.

Counsel for the respondents relies upon three propositions:

(1) Mandamus will not lie to enforce the payment of an unliquidated claim.

(2) Mandamus is limited to the enforcement of duties imposed by law, and will not lie to enforce contract rights.

(3) The constitutional inhibition of suits against the State precludes mandamus proceedings against State disbursing officers to compel payment of disputed and unliquidated claims.

These abstract principles of law are without application. Section 28, Chapter 43 of the Code, provides:

''Any claim of a contractor, or contractors, or others, not heretofore provided for, for labor done or for materials and supplies furnished to the State Road Commission, pursuant to the provisions of this Act, shall be audited by the Commission, and, if found to be correct, the Commission shall issue its requisition upon the Auditor of the State therefor, showing the nature of said claim and whether it is for labor done or materials and supplies furnished for the construction of State roads, or for other purposes.''

102 W. Va.

As the record does not in our opinion present any substantial issue of fact, and the position of the respondents not being justified as a matter of law under the terms of the contract, the peremptory writ will be awarded. The performance by public officials of a plain statutory duty, not involving the exercise of discretion or judgment on their part, may be enforced by the writ of mandamus. *State ex rel. Yost* v. *State Road Commission,* 96 W. Va. 184; *State ex rel. Key* v. *Bond, Auditor,* 94 W. Va. 255; *State ex rel. Bunch* v. *Fortney et al., State Road Commission,* 93 W. Va. 292, 116 S. E. 753; *State ex rel. Wheeler & Company* v. *Shawkey et al.,* 80 W. Va. 638, 93 S. E. 759.

*Writ awarded.*