State *ex rel.* C. J. Langenfelder & Son, Inc., *a corporation*

*v.*

The Honorable William S. Ritchie, Jr., West Virginia Commissioner of Highways

(No. 13033)

Submitted January 19, 1971.          Decided March 9, 1971.

*Graziani, O'Brien & Paterno, Philip J. Graziani,* for relator.

*Anthony G. Halkias,* Director, Legal Division, West Virginia Department of Highways, for respondent.

HAYMOND, JUDGE:

In this original mandamus proceeding instituted in this Court in November, 1970, the petitioner, C. J. Langenfelder & Son, Inc., a corporation, seeks a writ to compel the defendant, Honorable William S. Ritchie, Jr., West Virginia Commissioner of Highways, to issue requisitions upon the auditor of this State to draw warrants for the payment by the treasurer of this State from the state road fund, of the amounts of money which the petitioner claims are owing to it by the defendant for work performed and materials furnished on two road construction projects designated as Project I-70-1 (12) 1 and Project I-70-1 (13) 2, C-1, in Ohio County, West Virginia, under unit price contracts between the State of West Virginia acting by the State Road Commission of West Virginia, and the petitioner, dated July 24, 1963 and February 5, 1964. The projects were for the construction of what are designated as Wheeling Tunnel No. 2045 approximately 1425 feet in length and Interstate 70-Cemetery to Fulton Road approximately 3928 feet in length.

Upon the petition and its exhibits this Court issued a rule returnable January 19, 1971 at which time this proceeding was submitted for decision upon the petition and its exhibits, the answer of the defendant and its exhibits, the motion of the petitioner to strike certain portions of the answer of the

defendant, the demurrer and the general and special replication of the petitioner to the answer, the rejoinder of the defendant to the replication of the petitioner, and the briefs and the oral arguments in behalf of the respective parties.

There were three construction projects under three separate unit price contracts between the parties and after completion of the work the addition of numerous extras led to complications and differences and in October 1968 the petitioner filed in the Court of Claims of West Virginia claims on all three projects, which claims were designated as Numbers D-120, D-121 and D-122. After a hearing in the court of claims of claim Number D-120, the court of claims made an award in favor of the petitioner in the amount of $191,000.00. That award has been paid and it and the contract on which it was based are not involved in this proceeding.

Evidence was adduced by the petitioner and the defendant before the court of claims with respect to claim Number D-121, but before final action on that claim, and at the suggestion of the court of claims that counsel for the respective parties in claims Numbers D-121 and D-122 endeavor to settle those disputed claims, the defendant through his counsel and employees reviewed the entire matter and determined that the petitioner was entitled to the total of $325,000.00 for both claims, $130,134.90 for claim Number D-121 and $194,865.10 for claim Number D-122, and the defendant, through his counsel, agreed to the settlement of the claims for that amount and to pay that amount as soon as possible in accordance with the applicable statutes and laws of this State. By letter dated July 29, 1970, counsel for the petitioner accepted the settlement offered by the defendant in the amount of $325,000.00 as final payment for the disputed items of work and material involved in the claims. The letter contained a statement that payment should be made within thirty days but the record does not show that the defendant agreed to any time or method of payment. After the foregoing agreed settlement of the claims there have been no further proceedings concerning them in the court of claims.

The petitioner insists that, inasmuch as the claims designated Number D-121 and Number D-122 have been reviewed by the defendant and the defendant has determined that the petitioner is entitled to the sum of $325,000.00 in payment of both claims, the petitioner is entitled to such payment without delay and without any further proceedings in the court of claims or otherwise. The defendant, however, contends that, inasmuch as the final estimate for the extras for Project I-70-1 (12) 1 and the final estimate for the extras for Project I-70-1 (13) 2, C-1, differ in amounts from the settlement amounts for claims Numbers D-121 and D-122, and differ in amount from the agreed settlement of $325,000.00 for both claims, the final estimates must be considered, processed and determined in the court of claims before payment may be made by the defendant. The refusal of the defendant to pay the agreed amount of the settlement of the claims without action by the court of claims has resulted in the institution of this proceeding. In short, the dispute involves, not the amount or the validity of the claims of the petitioner, but the manner of and the procedure to be followed in the payment.

The petitioner reserved the right to file claims before the court of claims for amounts in addition to the amounts shown by the final estimates but before the claims for such additional amounts were acted upon in the court of claims the agreed settlement of the claims was entered into fairly and in good faith between the parties in the total amount of $325,000.00 which is a substantially smaller amount than the total amount of the undetermined claims which include claim Number D-121 in the amount of $464,655.66. It is clear that the settlement reduces the claims of the petitioner at least by the difference between $484,655.66 and $325,000.00 of $159,655.66 in favor of the defendant.

With respect to the agreement to settle the claims designated Number D-121 and Number D-122 the answer of the defendant contains these allegations:

"The respondent, through his attorney and employees, reviewed the entire matter and determined that the petitioner would be entitled to the total sum of Three Hundred Twenty-

Five Thousand Dollars ($325,000.00) for both Claims Numbered D-121 and D-122, which amount was further broken down as follows: $130,134.90 in Claim Number D-121 $194,-865.10 in Claim Number D-122.

"The respondent, through his attorney, agreed to settle the disputed claims for the aforesaid amounts, which agreement was to the effect that the respondent was willing to pay the relator herein the total sum of Three Hundred Twenty-Five Thousand Dollars ($325,000.00) on the amounts claimed by relator in its claims filed in the Court of Claims of the State of West Virginia."

The defendant has refused to pay the agreed amount of $325,000.00 in the foregoing settlement because he contends that payment of that amount can only be achieved by obtaining an award in the court of claims under the provisions of Chapter 14, Article 2, Sections 16 and 23, Code, 1931, as amended, and obtaining an appropriation of an amount in payment of the claim from the Legislature or, in the alternative, if the claim is made on an existing appropriation under the provisions of Chapter 14, Article 2, Section 19, Code, 1931, as amended, the payment can only be made if the court of claims certifies the approved claim and award to the West Virginia Commissioner of Highways, the State auditor and the Governor and the Governor instructs the auditor to issue his warrant in payment of the award.

There is no merit in that contention and inasmuch as a fair and valid settlement favorable to the defendant has been agreed to between the parties there is no necessity for action by the court of claims concerning the agreed settlement. Such course of action would result in continued delay, for no good reason, and would also deprive the petitioner of its right to the payment of the claims instead of a moral obligation of the Legislature which it could grant or refuse as it might determine.

Section 4, Article 3, Chapter 17, Code, 1931, as amended, provides that "Any claim of a contractor or others, not otherwise provided for, for labor done or for materials, services or

supplies furnished to the State road commission, pursuant to the provisions of any article of this chapter, shall be audited by the commissioner, and, if found correct, the commissioner shall issue the commission's requisition upon the auditor of the State therefor, showing the nature of such claim and whether it is for labor done or materials, services or supplies furnished for construction of State roads, or for other purposes, and the auditor shall issue his warrant upon the State treasurer therefor, and the treasurer shall pay the same to the person, firm or corporation entitled thereto, out of the funds in the treasury provided for that purpose."

Though there has been no formal audit by the commissioner, the action of the representatives of the commissioner, which is his action with respect to the claims, as alleged in the answer of the defendant that the entire matter was reviewed and it was determined that the petitioner was entitled to the total sum of $325,000.00 in payment of the claims, constituted, for the purpose of this proceeding, a substantial compliance with the audit requirement of the statute and is the equivalent of a formal audit. As the agreed settlement of the claims was fair and equitable and is manifestly to the advantage of the defendant there has been substantial compliance with the quoted provisions of the statute.

Applicable provisions of the contracts and the accompanying standard specifications which are part of the contracts expressly or by necessary implication authorize and empower the defendant as the West Virginia Commissioner of Highways to make and conclude the agreement and settlement of the claims for the agreed amount of $325,000.00. The West Virginia Commissioner of Highways is the chief executive officer of the recently created West Virginia Department of Highways. The office of State Road Commissioner has been designated as the West Virginia Department of Highways; and all duties and responsibilities heretofore imposed upon the State Road Commissioner and the powers exercised by him have been transferred to the West Virginia Department of Highways and such duties and responsibilities shall be performed by the department and its powers may be exercised through the West Virginia Commissioner of Highways. Chapter

68, Article 1, Section 2A, Acts of the Legislature, regular session, 1970, effective February 7, 1970, (Section 1, Article 2A, Chapter 17, Code, 1931, as amended). Section 1.4.1 of the specifications provides in part that should any misunderstanding arise as to the intent or meaning of plans, specifications or special provisions or any discrepancy should appear the decision of the commissioner shall be final and conclusive. Section 10 of each contract, with respect to payment for work done and materials furnished, provides in part that at the completion of the contract and its acceptance by the commission, the balance shall be certified by the engineer to the commission, and shall be audited by the commission, and if found to be correct, the commission shall issue its requisition upon the auditor of the State for the payment therefor in the manner prescribed by Section 28 of Chapter 112 of the Acts of the Legislature, 1921. Though the claims of the petitioner cover extra work which is defined in the specifications as "Any work or materials, to be furnished by the Contractor in order to complete the project, which do not appear in the proposal and contract as a specific item or items accompanied by a unit price and not included in the price bid for other items in the Contract.", though, as pointed out by the defendant, the specifications provide that extra work ordered and accepted shall be paid for under a supplemental agreement or force account, and though no written supplemental agreement was actually entered into, that requirement was waived by the acceptance of the extra work indicated in the final estimates and by the settlement of the claim for the agreed amount of $325,000.00.

By virtue of the agreed settlement which is authorized by and is within the scope of the contracts, it is the nondiscretionary duty of the defendant, under the provisions of Section 4, Article 3, Chapter 17, Code, 1931, as amended, to issue his warrant on the auditor of this State for the agreed amount of $325,000.00 in payment of the claims of the petitioner; and mandamus lies to require the defendant to discharge such duty. This Court has uniformly held in many cases that mandamus lies to require the discharge by a public officer of a nondiscretionary duty. *State ex rel. Bache & Co., Inc. v. Gainer,*

154 W.Va. 499, 177 S.E.2d 10, and the many cases cited in the opinion in that case.

Any remedy available to the petitioner in any proceeding in the court of claims with respect to its claims is not as adequate or equally as beneficial, convenient and effective as the remedy by mandamus. Though the writ of mandamus will be denied where another and sufficient remedy exists, if such other remedy is inadequate or is not equally as beneficial, convenient and effective, mandamus will lie. *State ex rel. Allstate Insurance Company v. Union Public Service District*, 151 W.Va. 207, 151 S.E.2d 102; *State ex rel. Wheeling Downs Racing Association v. Perry*, 148 W.Va. 68, 132 S.E.2d 922; *Draper v. Anderson*, 102 W.Va. 633, 135 S.E. 837, and the numerous cases cited in the opinion in the *Allstate Insurance Company* case.

In *Draper v. Anderson*, 102 W.Va. 633, 135 S.E. 837, the petitioners, doing business as Draper Brothers, sought a writ of mandamus to compel the defendant Anderson, division engineer of the State Road Commission, to certify to other defendants, as members of the commission, a true and final estimate of the work performed by the petitioners under a contract for the construction of a state road. The completed project was accepted by the commission and the petitioners contended that in the proper performance of the work they removed 112,106 cubic yards of unclassified excavation. The defendant Anderson certified the amount of such excavation to be 92,242 cubic yards, which amount was increased to 96,514 cubic yards and approved by the commission. The petitioners charged that Anderson refused to furnish fair monthly estimates and to certify the actual yardage moved by the petitioners under the contract because of his personal animosity toward the petitioners. This Court recognized and applied the provisions of Section 28, Chapter 43, Code, 1923, the statute then in effect, the pertinent portions of which are substantially the same as the provisions of Section 4, Article 3, Chapter 17, Code, 1931, as amended, and, as does the present statute, provides that any claim of a contractor shall be audited by the commission and if found to be correct the commission shall issue its requisition upon the auditor for such

claim. Though the record does not disclose that the claim of the petitioners in the *Draper* case was audited by the commission, this Court awarded the writ and held in point 2 of the syllabus that: "Under Section 28, Chapter 43, Code, providing that any claim of contractors for labor done or material furnished to the State Road Commission pursuant to the provisions of the act shall be audited by the Commission, and if found to be correct, the Commission shall issue its requisition upon the auditor therefor, the Road Commission may be compelled by mandamus, at the instance of contractors in cases not involving a substantial controversy of fact, to issue a requisition upon the auditor for labor performed by them in the construction of a State road under a contract with the State, by the Road Commission." The previously existing dispute between the petitioner and the defendant concerning the amount of the claims of the petitioner was resolved and eliminated by the agreed settlement which determined the amount of the claims to which the petitioner was entitled to be $325,000.00. Because of the settlement there is no substantial issue of fact involved in the present decision and the decision in the *Draper* case is controlling in the case at bar as to the right of the petitioner to a writ to require the defendant to issue the requested requisition.

Under Section 4, Article 3, Chapter 17, Code, 1931, as amended, which provides that any claim of a contractor, not otherwise provided for, for labor done or for materials, services or supplies furnished to the State road commission pursuant to the provisions of any article of that chapter, shall be audited by the commissioner, and, if found to be correct, the commissioner shall issue the requisition of the commission upon the auditor of the State therefor, the West Virginia Commissioner of Highways will be compelled by mandamus at the instance of the contractor in cases not involving a substantial controversy of fact, to issue a requisition of the West Virginia Department of Highways upon the auditor for work performed and material furnished by the contractor in the construction of a State road project under a contract with the State by the State road commission.

The defendant cites and relies upon the decision of this Court in the recent case of *State ex rel. C & D Equipment Company v. Gainer*, 154 W.Va. 83, 174 S.E.2d 729, in support of the contention that the petitioner is not entitled to relief by mandamus but is required to seek an award in a proceeding in the court of claims. *The C & D Equipment Company* case is distinguishable from the case at bar and does not apply to or control the decision in this proceeding. At the time of the decision of the *C & D Equipment Company* case the writer of this opinion was, and still is, of the opinion that the decision of the majority was an erroneous decision, for the reasons set forth in his dissenting opinion in that case. That decision, however, is of course a binding decision of questions there determined, but, as indicated, the decision in that case, being distinguishable from the case at bar, does not apply to or control the decision in this proceeding. In that case the contract under consideration between the petitioner and the State Building Commission of West Virginia based upon the accepted bid of the contractor of $41,717.00 for the demolition of certain buildings was a lump-sum contract which was violated by the building commission with resulting loss to the contractor whereas here the contracts under consideration are unit price contracts and no claim for damages is involved; there the contract made no provision for the adjustment or settlement of any damages resulting from its breach by the building commission, here the contracts provide, expressly or by necessary implication, for the determination and settlement of the amounts to be paid for work performed and materials furnished; there the claim for damages in the agreed amount of $29,907.68, resulted from breach of contract by the building commission and was considered by the Court to be unauthorized extra compensation for which no services were performed and the Court concluded that the settlement of the claim for damages of $29,907.68 was not a statutory renegotiation of the original contract, here the defendant is authorized and required by the statute, Section 4, Article 3, Chapter 17, Code, 1931, as amended, to issue his requisition for the payment of the claim of a contractor if such claim is found to be correct; there no appropriation had been made for the payment of the claim, here the claims are payable from the State

road fund in the treasury which has been provided for the payment of the cost of construction of State roads. Though point 2 of the syllabus in that case states broadly that state agencies, being immune from suit, are not authorized to entertain claims for unliquidated damages or to enter into any binding compromise of a claim, it was intended to apply, and applies, only to the settlement of what the Court considered to be an unliquidated claim for damages which was not covered or authorized by any statute or by the original contract between the contractor and the building commission. The contracts considered in this proceeding authorize the settlement of the claims and the cited statute authorizes and directs the defendant, when the claims are found to be correct, to issue the requisition of the commission.

The writ of mandamus to require the defendant to issue the requisition of the West Virginia Department of Highways upon the auditor for a warrant to pay the claims of the petitioner in the total amount of $325,000.00 is awarded.

*Writ awarded.*