314 S.E.2d 616

**Dana Kent REED**

v.

**L. Clark HANSBARGER,
Dir., etc., et al.**

**No. 16095.**

Supreme Court of Appeals of
West Virginia.

March 20, 1984.

Daniel F. Hedges, Charleston, for petitioner.

David Patrick Lambert, Asst. Atty. Gen., Charleston, for respondents.

McGRAW, Justice:

In this mandamus action, the petitioners, inmates at the Huttonsville Correctional Center, seek to compel the respondents, public health officials charged with the administration of state health and sanitation laws, to (1) enforce licensing requirements; (2) conduct regular inspections; and (3) close noncomplying food service facilities at the Huttonsville Correctional Center. The petitioners contend that the respondents allow the continued operation of food service facilities at Huttonsville despite the absence of a food service permit and despite inspection scores which would warrant closure of any other food service establishment.

The impetus for this mandamus action was the Thanksgiving food poisoning of a substantial number of inmates at the Huttonsville Correctional Center on November 24, 1983. On Friday, November 25, 1983, more than one hundred inmates, including the petitioners, were stricken with diarrhea and vomiting. Approximately seventy of these inmates received injections for the treatment of food poisoning that night, and several inmates were apparently hospitalized for varying lengths of time.

This recent food poisoning incident, however, is but one in a long history of repeated health and sanitation violations at Huttonsville over the last six years. Violations over this time period include the improper storage of perishable and potentially hazardous food; the serving of outdated food; food contaminated by rodents, insects, and maggots; uncovered food prepared days in advance; infestation of the food service facility by rats, mice, cockroaches, and flies; handling of food by sick inmates; and leaking sewage.

The respondents contend that the level of food service operations at Huttonsville is well above the state and federal averages for all types of food service establishments. They point out that the most recent inspection of the Huttonsville food service facility prior to the institution of this mandamus action in August 1983, yielded a score of seventy-three out of a possible one hundred perfect score, and that a score of seventy is the cutoff point between passing and failing a food service inspection. They also indicate that measures are currently underway to renovate the entire food service facility at Huttonsville. This plan includes the employment of a professional food service corporation to manage and staff Huttonsville's food service operations. The respondents represent that the entire food service facility at Huttonsville will be dismantled, and that new walls, floors, plumbing, electrical wiring, ventilation, food service equipment, and refrigeration equipment will be installed.

Concerning the Thanksgiving food poisoning episode, the respondents refer to a Department of Corrections report which speculated, without concrete proof, that the illnesses were probably caused by inmates "smuggling" turkey back to their dormitories after Thanksgiving dinner and then consuming it much later. The respondents' further excuse that, "Incidents of food poisoning occur not infrequently in restaurants and hotels in spite of the fact that such establishments are inspected regularly and have permits," provides little solace either to those who occasionally dine in establishments under the respondents' surveillance or to the inmates who have no choice but to consume the food prepared at the Huttonsville Correctional Center.

260

The respondents admit that the Huttonsville food service facility is a "food service establishment" under the *West Virginia Board of Health Food Service Sanitation Rules*, Chapter 16–1, Series XVII (1983). The respondents also admit that although the facility did possess a food service permit until 1982, when the State Department of Health assumed responsibility from local health officials for inspecting Huttonsville, it has not had a permit since 1982. They assert, however, that since 1982, they "have made a consistent, persistent effort ... to eliminate deficiencies in the food service operations at Huttonsville so that the facility can be issued a new permit."

Since the State Department of Health assumed responsibility for inspecting the food service operations at Huttonsville, the facility had been inspected three times prior to the initiation of this mandamus action. An inspection on March 31, 1982, resulted in a score of sixty-five; an inspection on February 2, 1983, resulted in a score of sixty-six; and a final inspection on August 27, 1983, resulted in the previously mentioned score of seventy-three. At the time of each of these inspections through the present, food service sanitation regulations provided that when the rating score of a food service establishment was seventy to seventy-nine points, all violations of one or two point demerit items "shall be corrected within a specified period of time not to exceed ten (10) days;" and that when the rating score was sixty-nine or less, "the permit shall be immediately suspended." *See West Virginia Board of Health Food Service Sanitation Rules*, Chapter 16–1, Series XVII, §§ 4.3.4.4 and 4.3.4.6 (1983); *West Virginia Board of Health Food Service Sanitation Regulations*, Chapter 1, Article 3, §§ 3.3.4.4 and 3.3.4.6 (1980). These sanctions were not imposed despite their clear applicability.

Subsequent to the initiation of this mandamus action, another inspection of the Huttonsville food service facility was conducted on February 20, 1984, yielding a "corrected" score of eighty-six. The initial score upon inspection, however, was seventy-six. Department of Health officials permitted the facility to add coolant to a refrigeration unit in which the temperature of chicken was measured at sixty degrees Fahrenheit, a five point demerit, and to label a previously unlabelled container of a toxic cleaning substance, also a five point demerit. The respondents state that permitting immediate corrective measures by food service establishments is a standard procedure. It is to be noted, however, that this procedure was not utilized in the previous three inspections, nor do the respondents point to any authority for this practice. Furthermore, there is no indication that the temperature of the refrigeration unit involved was checked subsequent to the addition of coolant. Perhaps the level of coolant was not the problem, or perhaps a rupture in the refrigeration unit made the addition of coolant a fruitless exercise. Finally, other violations which were not corrected include: the absence of sneeze guards in the inmate serving line; many food containers in poor condition; cockroaches roaming throughout the kitchen; peeling paint on the walls throughout the kitchen, in the meat shop, meat cooler, and vegetable cooler; and poor ventilation. Despite an attempt to influence the Court to the contrary, it is difficult to share the respondents' apparent sense of "progress" with respect to the Huttonsville food service facility.

West Virginia Code § 16–1–10 (1983 Supp.), provides that the Director of the Department of Health shall "enforce all laws of this State concerning public health, health and mental health." West Virginia Code § 16–1–7 (1979 Replacement Vol.), further provides that, "the state board of health shall have the power to promulgate rules and regulations ... as are necessary and proper to effectuate the purpose of this chapter." Pursuant to this legislative grant of rule-making authority, the West Virginia Board of Health has enacted rules regarding food service sanitation, thereby establishing "the minimum requirements of the West Virginia board of health governing the construction and operation of food service establishments." *West Virginia Board of Health Food Service Sanitation Rules* § 1.1 (1983). Section 2.2 of these

rules provide that, "The enforcement of these legislative rules is vested with the director of the West Virginia department of health or his lawful designee."

As previously noted, the respondents recognize that the Huttonsville facility is a "food service establishment" within these rules promulgated by the Board of Health. Section 3.12 of the rules provides that the term "food service establishment" includes any "private, public or non-profit organization or institution routinely serving food." Section 4.2.1 of the rules also provides that, "No person shall operate a food service establishment within the State of West Virginia who does not possess a valid permit issued to him by the Director." Under section 4.4.1, it is mandatory that, "Each food service establishment shall be inspected at least once each six months." Finally, as already indicated, mandatory penalties are provided by the rules for inspection scores within certain ranges.

The respondents admit that the Huttonsville facility has operated without a permit since 1982. They also concede that a routine six month inspection of the Huttonsville facility in late 1982 did not take place. Although in 1978, after repeated reinspections and directives failed to remedy substantial deficiencies, the respondents directed that the food service facility be closed until corrections were made, the respondents concur that they have not subsequently directed Huttonsville to close its operations despite inspections which indicated a significant number of deficiencies warranting closure. As the respondents state, "In this respect, State and local health officials have treated the Huttonsville food service differently than they would a private restaurant."

The respondents offer several reasons for the disparity in treatment between correctional food service facilities and other food service establishments. First, they contend that they are uncertain as to their authority to order the Commissioner of Corrections to close food service operations at state correctional institutions. This uncertainty conflicts with their admitted closure action in 1978. Second, they empha-

size that while patrons of a closed restaurant simply may dine elsewhere, that option is not available to the inmates at Huttonsville. This is an argument in the petitioners' favor, however, since they have no alternative to the food service operations at Huttonsville to satisfy their nutritional needs. Finally, the respondents argue that the cost of providing food to the inmates at Huttonsville, should its food service facilities be closed, would decrease Huttonsville's capacity to improve those facilities, since funds devoted to facility improvement would be diverted to food purchase from outside sources. This argument only emphasizes the need to insure that food service operations at Huttonsville meet minimum health and sanitation requirements in order to avoid this diversion of funds. The potential cost of procuring food from outside sources serves as an important incentive for preventing the food service operations at Huttonsville from declining into its present, unfortunate state of affairs. Had the respondents vigorously enforced health and sanitation laws with respect to the Huttonsville facility in the past, the current, approximately seven hundred thousand dollar renovation project might have been unnecessary.

■ It is well established in this jurisdiction that "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969); *see also* Syl., *Vanmeter v. W. Va. Dept. of Motor Vehicles*, 173 W.Va. 129, 313 S.E.2d 405, (1984); Syl. pt. 1, *Meadows v. Lewis*, 172 W.Va. 457, 307 S.E.2d 625 (1983); Syl., *Hoffman v. Grove*, 171 W.Va. 120, 301 S.E.2d 810 (1983); Syl. pt. 1, *McMellon v. Adkins*, 171 W.Va. 475, 300 S.E.2d 116 (1983); Syl. pt. 3, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981); Syl. pt. 1, *Smith v. State Board of Education*, 170 W.Va. 593, 295 S.E.2d 680 (1982); Syl. pt. 1, *United Mine Workers of America v. Miller*, 170 W.Va. 177, 291 S.E.2d 673 (1982); Syl. pt. 1, *Perry v. Barker*, 169 W.Va. 531, 289 S.E.2d 423 (1982);

Syl. pt. 3, *Potter v. Miller,* 168 W.Va. 601, 287 S.E.2d 163 (1981).

■ It is also well settled in this jurisdiction that "A peremptory writ of mandamus will issue to require the discharge by a public official of a non-discretionary duty." Syl. pt. 4, *Glover v. Sims,* 121 W.Va. 407, 3 S.E.2d 612 (1939); *see also* Syl. pt. 6, *State ex rel. Bagley v. Blankenship,* 161 W.Va. 630, 246 S.E.2d 99 (1978); Syl. pt. 6, *State ex rel. Anderson v. Board of Education of Mingo County,* 160 W.Va. 208, 233 S.E.2d 703 (1977); Syl. pt. 6, *State ex rel. Kanawha County Bldg. Commission v. Paterno,* 160 W.Va. 195, 233 S.E.2d 332 (1977); Syl. pt. 3, *State ex rel. Goodwin v. Rogers,* 158 W.Va. 1041, 217 S.E.2d 65 (1975); Syl. pt. 1, *Mars v. Luff,* 155 W.Va. 651, 186 S.E.2d 768 (1972); Syl. pt. 3, *Delardas v. County Court of Monongalia County,* 155 W.Va. 776, 186 S.E.2d 847 (1972); Syl. pt. 8, *State ex rel. State Bldg. Commission v. Moore,* 155 W.Va. 212, 184 S.E.2d 94 (1971); Syl. pt. 2, *Humphrey v. Mauzy,* 155 W.Va. 89, 181 S.E.2d 329 (1971); *State ex rel. C.J. Langenfelder & Son, Inc. v. Ritchie,* 154 W.Va. 825, 179 S.E.2d 591 (1971).

■ As previously noted, the West Virginia Board of Health has promulgated rules regarding food service sanitation which require the issuance of permits for any private, public or non-profit organization or institution routinely serving food. Additionally, it has established minimum levels of health and sanitation below which those organizations or institutions cannot operate. As we stated in *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622, 631 (1981): "Once the executive officer or agency has made and adopted valid rules and regulations pursuant to the grant of the legislative powers, they take on the force of statutory law." *See also* Syl. pt. 1, *Rinehart v. Woodford Flying Service, Inc.,* 122 W.Va. 392, 9 S.E.2d 521 (1940).

■ Under West Virginia Code §§ 16–1–10(2) and (14) (1983 Supp.), the Director of the Department of Health is charged with the nondiscretionary duty of enforcing our state's statutes, rules, and regulations regarding the sanitary conditions of food service establishments in this state. There is no exemption, either express or implied, for food service facilities within our state's correctional institutions. The Director of the Department of Health has a nondiscretionary, mandatory duty to enforce the licensing, inspection, penalty, and other provisions of governing the construction and operation of food service establishments in this state with respect to food service facilities within our state's correctional institutions. Furthermore, the petitioners have a clear legal right to compel the enforcement of the rules in question, and are without another adequate legal remedy.

■ For the foregoing reasons, we grant a writ of mandamus compelling the respondents to (1) enforce section 4.2.1 of the *West Virginia Board of Health Food Service Sanitation Rules* (1983) by prohibiting officials from operating a food service facility at the Huttonsville Correctional Center unless they obtain a valid permit; (2) enforce section 4.4.1 of the *West Virginia Board of Health Food Service Sanitation Rules* (1983) by inspecting the food service facility at Huttonsville at least once each six months; (3) enforce sections 4.3.4.2. through 4.3.4.7. of the *West Virginia Board of Health Food Service Sanitation Rules* (1983) by imposing the mandatory penalty provisions of these sections; and (4) enforce all other sections of the *West Virginia Board of Health Food Service Sanitation Rules* (1983) applicable to other "food service establishment[s]" as defined in the rules with respect to the food service facility at Huttonsville.

Writ awarded.