McLain *v.* Miller County.

Opinion delivered January 13, 1930.

*Shaver, Shaver & Williams,* for appellant.

*Will Steel,* for appellee.

MEHAFFY, J. J. H. McLain was county judge of Miller County for four years, and during that time as such county judge and ex-officio road commissioner he had the care, custody and control of the mules and other stock belonging to said county. Immediately after he went into office, January, 1925, he took charge of the stock, and, as county judge rented 80 acres of land from his sisters for the purpose of pasturing and keeping said stock, and it was so used by him during said four-year period. The rental was fixed at $240 a year. J. H. McLain, as county judge, executed one note for $240 as follows:

"Rent note, $240, Texarkana, Arkansas, January 2, 1928, December 31, 1928, I as county judge of Miller County, Arkansas, promise to pay to Mrs. W. J. Timberlake, and others, or order, at Texarkana, Miller County, Arkansas, $240 for the use of 80 acres of land about two miles east of Texarkana, and situated on the north side of old Rando road; said lands are to be used for pasturing the county's teams. J. H. McLain, County Judge, Miller County, Arkansas."

The notes were not paid for quite a while, and, finally, while J. H. McLain was still county judge, he filed a claim in his own name for three of the notes. The claim filed is as follows:

"To J. H. McLain, Dr., Road District No. 5.

"To rent of corral and pasture lands for county's

team for the year 1925............................................................$240

"To the same for the year 1926.................................... 240

"To the same for the year 1927.................................... 240

_____

"$720"

There was also a claim filed by Hal Green for $96.50, $80 of it being for 160 bales of hay, and $16.50 for alfalfa. This claim was filed in the name of Hal Green. The claims were all properly verified, and were all allowed by the county court, and warrants were issued; one warrant for $80 to Hal Green, a warrant in the sum of $720 to J. H. McLain, and a warrant for $240 to Mrs. J. W. Timberlake. All of the warrants were paid.

An appeal was taken from the order and judgment of the county court to the circuit court by a taxpayer, and, when the case reached the circuit court, McLain filed a motion to dismiss, and Hal Green also filed a motion to dismiss the appeal. The circuit court overruled the motions to dismiss, and affirmed the judgment of the county court as to the claim allowed Mrs. Timberlake for $240, and affirmed the judgment in favor of Hal Green in the sum of $80, but disallowed the sum of $16.50 in the Hal Green claim. This appeal is prosecuted to reverse the judgment of the circuit court.

The circuit court disallowed the claim of J. H. McLain for $720, and reversed the judgment of the county court on the ground that McLain had no personal interest in the subject-matter of the claim, and that the allowance of the claim by the county court was void, and should be set aside without prejudice to the claim being made in behalf of the parties who were entitled to assert the same for rent of pasture for some amount, if any rent should be due, but affirmed the judgment of the county court and allowed the claim of $240 in favor of Mrs. Timberlake, whose claim was filed in the county court in her own name.

J. H. McLain contends that the motion to dismiss the appeal in the circuit court should have been sus-

tained, because it was allowed and paid by the county court to the persons who were entitled to receive the same, and that there was nothing left for the circuit court to try.

It is contended that, because the warrants were issued after the judgment in the county court and paid to the parties to whom they belonged, and because it is contended that there ceased to be an issue, facts having intervened; that is, the judgment of the county court having been paid, rendered the decision of no practical application to the controversy between the litigants.

We do not agree with the appellants in this contention. The law provides that appeals may be granted, as matter of right, from all final judgments of the county court at any time within six months after the rendition of same. Section 2287, Crawford & Moses' Digest. And the statute provides that the circuit court shall proceed to try such appeal cases. Section 2292.

This court said, in a case appealed from the county court to the circuit court: ''The judgment of the circuit court disallowing the claim rendered invalid the warrants previously issued under the judgment of the county court; and when they were presented to the county court for reissuance, that court properly rejected them.'' *Murphy* v. *Garland County*, 99 Ark. 173, 137 S. W. 813.

The court also said in the above case: ''The appeal from the county court was prosecuted by a citizen and taxpayer, who had the right to so prosecute from a judgment allowing a claim against the county.''

The taxpayer had a right to prosecute the appeal from the county court; the circuit court had jurisdiction to try the case, and the fact that a warrant had been issued, before it was tried in the circuit court, was immaterial. When one has a claim allowed in his favor by a county court, he is bound to know that a taxpayer may prosecute an appeal to the circuit court within six months from the judgment allowing the claim. And whether he is paid in the meantime or not, the circuit

court has jurisdiction to try the case, and a judgment of the circuit court disallowing the claim operates as a reversal of the order of the county court, and makes void the warrant issued thereunder unless reversed by the Supreme Court.

As we have already said, McLain's claim was filed in his own name in the county court, and, he had, according to his own testimony, no interest in the claim. He said that he represented his sisters, as their agent. If he did this, he had no right to make a contract with himself as county judge, representing both the county and the owners of the land. A public officer cannot make a legal contract with himself as agent of some other person, whether the contracts are made in good faith or not.

"As the efficiency of the public service is a matter of vital concern to the public, it is not surprising that agreements tending to injure such service should be regarded as being contrary to public policy. It is not necessary that actual fraud should be shown, for a contract which tends to the injury of the public service is void, although the parties entered into it honestly, and proceeded under it in good faith. The courts do not inquire into the motives of the parties in the particular case, to ascertain whether they were corrupt or not, but stop when it is ascertained that the contract is one which is opposed to public policy. Nor is it necessary to show that any evil was, in fact, done by or through the contract. The purpose of the rule is to prevent persons from assuming a position where selfish motives may impel them to sacrifice the public good to private benefit." 6 R. C. L. 730.

If J. H. McLain, as an individual, represented the land owners in making the contract, he could not represent the county. In acting as county judge, he could not represent the other parties. In other words, he could not contract with himself.

"It is, of course, clear that a contract which induces a public officer to violate his duties to the public is against

public policy. It is not necessary that there should be an express agreement to that effect. The acceptance of private employment, which conflicts with his public duties, may be sufficient. An officer's duty is to give to the public service the full benefit of a disinterested judgment, and the utmost fidelity. Any agreement or understanding by which his judgment or duty conflicts with his private interest is corrupting in its tendency. * * * The law will not permit public servants to place themselves in a situation where they may be tempted to do wrong, and this it accomplishes by holding all such employment, whether made directly or indirectly, utterly void.'' 6 R. C. L. 739.

''The rule prohibiting public officers from being interested in public contracts is embodied in the statutes of some States. The rule is, however, not dependent on statute. According to the weight of authority, a contract by a board or public body, with a member thereof, or in which a member thereof is interested, is unenforceable, even in the absence of a statutory prohibition, although from some of the decisions it is not clear whether such contracts are to be regarded as void or voidable.'' 6 R. C. L. 740.

The county had the right, not only to the faithful service, but to the best judgment, of the county judge in making all contracts, and he could not lawfully make a contract either with himself, or with himself as agent for others. But in this case the claim filed in the county court was filed in the named of McLain himself. It was claimed that the county owed him $720. It is the contention of the appellant that McLain had a right to file this claim under § 1092, Crawford & Moses' Digest, which provides that, ''an executor, administrator, guardian, trustee of an express trust, or a person with whom, or in whose name a contract is made for the benefit of another, may bring an action without joining with him the person for whose benefit it is prosecuted.'' This section has no application. McLain did not make this in

his own name for the benefit of his sisters who owned the land, but it was made to them in their name with him as county judge. It was allowed, and the warrant issued to him, and it is wholly immaterial whether he paid the money to persons entitled to it, because, in the first place, he had no interest in it according to his own contention, and therefore had no right to file the claim or collect the judgment. And, in the next place, he had no right to file a claim against the county in his own name and try the case himself. Section 20, article 7, Constitution of Arkansas.

No effort was made to amend in the county court; no suggestion was made in the county court that the claim belonged to somebody else, but J. H. McLain, as county judge holding county court, allowed the claim in his own name. An appeal was then prosecuted to the circuit court, and then it was sought to substitute other parties who claimed an interest for McLain, who had no interest. This would be equivalent to bringing a new suit in the circuit court, and the circuit court would have no jurisdiction to try the claim.

"The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. The county court shall be held by one judge, except in cases otherwise herein provided." Section 28, article 7, Constitution of Arkansas.

In the very nature of things there could not have been any trial. You could hardly imagine a person filing a claim for himself, swearing to its correctness, and then disallowing it.

We have recently held that an amendment cannot be made by the substitution of another person for the plaintiff in the case.

"The code is very liberal, but it is the well established rule that courts will not allow amendments to be made which change the parties to the action, unless there is something in the record to authorize the amendment." *Fencing Dist. No. 6 of Woodruff County* v. *Mo. Pac. Rd. Co., ante* p. 488.

"Under a statutory provision permitting the adding or correction of the name of a party, an entire change in the parties plaintiff or defendant cannot be permitted. A statute permitting amendments as to judgment will not permit an amendment making new parties plaintiff in order to sustain an action that was originally brought without authority." 31 Cyc. 475.

This court, in construing this provision of the code. said: "This provision of the Code assumes that the plaintiff has a cause of action, and does not authorize the court in any case, where the plaintiff has failed to show any cause of action, to amend by adding the name of a party in whose favor a cause of action is shown by the complaint to exist, because such a proceeding would be practically instituting a new action, and forcing a party, at the instance of one who has no right to demand it, to commence an action when he does not wish to do so. Broad and liberal as the provisions of the statute of amendments are, we see no authority in them for such a proceeding." *State use Oliver* v. *Rottaken*, 34 Ark. 144; *Fencing District No. 6 of Woodruff County* v. *Mo. Pac. Rd. Co., ante* p. 488.

An additional reason why the amendment could not be made in this case is that the circuit court had no original jurisdiction of a claim against the county. The county court had exclusive original jurisdiction. The circuit court can try a case of this kind; has jurisdiction to do so only when it is appealed from the county court. To permit an amendment substituting a party in the circuit court in this case, would be permitting the circuit court to exercise original jurisdiction, and this it cannot do.

836

It becomes unnecessary to discuss whether the contract could have been ratified. The circuit court had no original jurisdiction to try this claim, and properly dismissed it. The allowance of the claim for $240 in favor of Mrs. Timberlake was proper. As to the claim filed by Green, it may be said that he did not claim the $16.50, but that belonged to another party, and this party did not file any claim.

The judgment of the circuit court is correct, and is therefore affirmed.

Mr. Justice KIRBY dissents.