WARREN v. REED.

5-2038A                                              331 S. W. 2d 847

Opinion delivered February 15, 1960.

*Richard W. Hobbs,* for appellant.

*R. Julian Glover, Wootton, Land & Matthews, Earl J. Lane* and *Wood, Chesnutt & Smith,* for appellee.

JIM JOHNSON, Associate Justice. This is a taxpayer's suit. The action was brought by appellant, Herman C. (Dusty) Warren, County Judge of Garland County, in his capacity as a taxpayer and resident of Garland County, against appellee, James M. Reed, a member of the Board of Governors of the Ouachita General Hospital. Appellant alleged that appellee had entered into a laundry contract with the Board of Governors while appellee was a member of the Board and asked the court to declare such contract null and void and against public policy and further asked the court to require appellee to make a strict accounting of all profits he had made under such contract.

After hearing this case in conjunction with another case involving this appellant and this appellee, et al, the Chancellor found for appellee holding that the complaint

should be dismissed for want of equity. From such holding comes this appeal.

For reversal appellant contends that the trial court erred in dismissing the complaint of the plaintiff for want of equity in that under the law of the State of Arkansas, a public officer, as a member of a board or commission, is forbidden from entering into a contract with such board or commission whereby the public officer receives any moneys or profits.

And, that the trial court erred in refusing to declare the contract in question null and void and against public policy and in refusing to prohibit and enjoin appellee, James M. Reed, from receiving further moneys under and by virtue of the contract in question.

The facts are briefly as follows: Appellee, James M. Reed, was the operator of the Craighead Laundry in Hot Springs. The building which housed the laundry was owned by Mr. Hill A. Wheatley, who was chairman of the Board of Governors of the Ouachita General Hospital. Appellee was also a member of the Board of Governors of the hospital and served as Treasurer of the Board. Bids for the laundry of the hospital were called for and Reed bid upon the laundry contract while a member of the Board, resulting in the Board awarding an exclusive contract to Mr. Reed to handle all of the laundry for the hospital.

The record reflects that a contract was advertised for, that several bids were received, and that the bid of appellee was the lowest bid. There was no evidence introduced on the part of appellant that appellee had any advance information that any other bidder did not have or could not have had upon reasonable inspection. Mr. Albert Guice of the Howlett Linen Service, a competitor of appellee, submitted one of the rejected bids. Mr. Guice testified as follows relative to Reed's bid:

"Q. Mr. Guice, I hand you herewith a bid, about which it has been testified that the Board of Governors accepted, and I'll ask you to read the bid and the price contained therein for services rendered to the Ouachita

General Hospital. Are the prices shown on that bid for laundry service to the Ouachita General Hospital reasonable or not?

"A. They're below average, yes.

"Q. Would you be able to take a contract for the Ouachita General Hospital laundry under the same prices as shown there?

"A. I would not."

Appellee testified that the laundry contract provided him with a "filler" by keeping his employees at work for certain hours when otherwise they would be laid off, thereby keeping them employed full time instead of part time and thus more happily employed. At the conclusion of the testimony the chancellor found, and we think properly so, that there was no fraud on the part of appellee in his dealings in connection with the laundry contract, and further that he had no special knowledge that was not at the command of the other bidders. With these points thus determined, the balance of the case evolves into purely a question of law as to whether or not a public officer, such as appellee in this case, could enter into a contract with the Board of Governors of the Ouachita General Hospital while acting in his capacity as a public officer and treasurer of the board.

In 43 Am. Jur., Section 266, at page 81, we find the following:

"A public officer owes an undivided duty to the public whom he serves, and is not permitted to place himself in a position which will subject him to conflicting duties or expose him to the temptation of acting in any manner other than in the best interest of the public. One of the most familiar applications of this doctrine is the rule which prevents an officer from having an adverse interest in any contract which he executes on behalf of the public."

In 43 Am. Jur., Section 294, at page 103, the following rule is set forth:

"A contract made by a public officer is against public policy and unenforceable if it interferes with the unbiased discharge of his duty to the public in the exercise of his office, or if it places him in a position inconsistent with his duty as trustee for the public or even if it has a tendency to induce him to violate such duty. Such contracts are invalid, although there may have been no actual loss or detriment to the public or fraudulent intent in entering into the contract, since the rule invalidating the contract is based on public policy."

In 43 Am. Jur., at page 105:

"A contract entered into by a public officer in his individual capacity, the effect of which is to create a personal interest which may conflict with the officer's public duty, is contrary to public policy."

In 43 Am. Jur., Section 299, page 206:

"A contract entered into by a board with one of its own members is void, or at least voidable, and this, even in the absence of a statutory prohibition. The reason is that in such cases, the member's public duty and his private interests are directly antagonistic. It matters not if he did, in fact, make his private interests subservient to his public duties."

Our research reveals that Arkansas has always followed the rules hereinbefore quoted from Am. Jur. and in the case of *McLain* v. *Miller County*, 180 Ark. 828, 23 S. W. 2d 264, this Court cited and quoted the following rule:

"As the efficiency of the public service is a matter of vital concern to the public, it is not surprising that agreements tending to injure such service should be regarded as being contrary to public policy. It is not necessary that actual fraud should be shown, for a contract which tends to the injury of the public service is void, although the parties entered into it honestly, and proceeded under it in good faith. The courts do not inquire into the motives of the parties in the particular case to ascertain whether they were corrupt or not but

stop when it is ascertained that. the contract is one which is opposed to public policy. Nor is it necessary to show that any evil was, in fact, done by or through the contract. The purpose of the rule is to prevent persons. from assuming a position where selfish motives may impel them to sacrifice the public good to private benefit.''

This Court went on in the foregoing cited case to state further:

''It is, of course, clear that a contract which induces a public officer to violate his duties to the public is against public policy. It is not necessary that there should be an express agreement to that effect. The acceptance of private employment, which conflicts with his public duties may be sufficient. An officer's duty is to give to the public service the full benefit of a disinterested judgment, and the utmost fidelity. Any agreement or understanding by which his judgment or duty conflicts with his private interest is corrupting in its tendency. The law will not permit public servants to place themselves in a situation where they may be tempted to do wrong, and this it accomplishes by holding all such employment, whether made directly or indirectly, utterly void.''

This Court, in the cited case, went on to state that the rule which prevented public officers from being interested in public contracts is embodied in the statutes of some states, but that this rule is not dependent on statute and according to the great weight of authority a contract with a member of a board of public body or in which a member thereof is interested, is unenforceable, even though there is no statute directly prohibiting such a contract. A public officer cannot lawfully make a contract either with himself, or with himself as agent for others.

In the case of *Smith* v. *Dandridge*, 98 Ark. 38, 135 S. W. 800, this Court again laid down the rule that it was unlawful for a director of a school district to enter into a contract with the school district where he had a personal and individual interest in the contract and that public policy of the state would forbid the director from

making such a contract and that such a contract would not be enforceable but that such a contract was not absolutely void but it would not be a binding agreement and could be voided. This Court, in that particular case, allowed payment to the director on a *quantum meruit* basis because of the fact the school district had received and retained the benefits of his services but held that payment would not be allowed on the basis of the contract because the contract was unenforceable and not binding.

Following the rules set out in the *McLain* and *Smith* cases, *supra,* we find that the contract existing between appellee and Ouachita General Hospital must be cancelled and appellee restrained from further contracting with the Board so long as he remains a member thereof. We further find that in the absence of a specific prohibition in the Statutes of Arkansas providing for the purchase, maintenance and operation of county hospitals,[1] against the members of a board of governors from contracting with the board, and since the hospital did receive and retain the benefits of the services performed by appellee, he must be allowed payment for same on a *quantum meruit* basis. In determining the *quantum meruit* we find from the testimony of the appellee's competitor, Mr. Albert Guice, that appellee received no more than he deserved for his services performed; in fact, he received less than the witness would have charged for the performance of the same service and less than any of the bidders on the contracts would have charged. Therefore, the decree of the Chancellor is reversed and the cause is remanded with directions to enter orders consistent with this opinion.

Reversed.

---

[1] Act No. 481 of the Acts of Arkansas, 1949, and as amended by Act No. 83 of the Acts of Arkansas, 1953.