IN THE MATTER OF ROBERT L. SHEAR AND ROBERT H. KRAUS, ATTORNEYS AT LAW.

Argued January 11, 1977—Decided March 8, 1977.

*Mr. Richard Schachter* argued the cause for the Somerset County Ethics Committee.

*Mr. David J. Meeker* argued the cause for respondents.

PER CURIAM. This disciplinary proceeding against respondents Robert L. Shear and Robert H. Kraus, who are members of the bar of this State, has its origin in their representation of Leon J. and Paula H. Yarusi in a real estate transaction. The Yarusis owned property at the corner of South Avenue (N. J. State.Highway Route 28) and Second Street in Fanwood, N. J., which had highway frontage of approximately 186' and was 156' in depth. In October 1971, the Yarusis agreed to sell the corner portion of the property measuring 100' x 156' to a savings and loan association and consulted respondent Shear about a contract, subdivision of the property and other details. The savings and loan association was anxious to have a contract

executed as soon as possible as it was filing an application for a branch office with the Department of Banking of the State of New Jersey and needed the contract to support its application.

A form of contract was prepared in respondents' office. Shear had the Yarusis sign the draft on November 7, 1971 and immediately delivered it to the president of the savings and loan association. It then developed that the survey of the property (dated August 26, 1969) attached to the contract, which purported to indicate the tract to be conveyed, was obsolete as it showed the corner to be squared when in fact the State of New Jersey had in 1970 rounded off the corner and installed curbing.[1] This error resulted in the proposed contract actually providing only 94′ of highway frontage for the purchaser and was unsatisfactory to the association which insisted on a full 100′ frontage.

In order to compensate for the inaccuracy, a revised survey, dated November 18, 1971, was then attached to the contract in place of the original survey. The revised survey fixed the dimensions of the tract to be conveyed as 100′ frontage on South Street, overall width of approximately 106′ and depth of approximately 156′.

It is this change in the contract which added an additional six feet to the width of the tract being conveyed, together with the addition of clauses regarding parking privileges, etc., which form the basis of the ethics complaint. The Yarusis allege that the contract modifications were made without their knowledge and consent. They also claim that respondents' retention of Charles Thatcher, another attorney, to handle the subdivision application, was done without their authorization. They contradict Kraus' testimony that he told the Yarusis in November 1971 that he was a member of the Fanwood Planning Board, that the

---

[1] The Yarusis had obtained the survey when they purchased the tract in August 1969. Respondent Shear did not represent them at the time.

office could not handle the subdivision application because of the conflict, and that another attorney was being retained to process it. Indeed, the Yarusis testified that in November 1971, when Thatcher was retained, they did not even know respondent Kraus and met him for the first time in February 1972.

The foregoing testimony by the Yarusis formed the background of an additional unrelated ethical charge against respondents as follows. When the Yarusis were cross-examined as to their insistence that they had never met Kraus prior to February 1972, they were shown legal documents dated in June 1971 signed by them and bearing Kraus' signature as a witness. Two of the documents were wills executed by the Yarusis and dated June 21, 1971. These wills bore the attesting signatures of Shear and Kraus. Despite this evidence, the Yarusis adhered to their prior testimony and, as to the wills, said they had executed them in the presence of Shear only. According to Mrs. Yarusi, Shear said that Kraus would sign the wills later.

Respondents categorically deny that the wills were executed in such a manner. It is suggested that the Yarusis had a motive for testifying as they did because, had they admitted that the wills were executed in the presence of both respondents, it would have contradicted their prior testimony that they never met Kraus until February 1972.

The Somerset County Ethics Committee,[2] with one member dissenting, regarded the Yarusis' testimony as clear and convincing and found that respondent Shear had induced the execution of the wills outside the presence of a necessary witness and that respondent Kraus had signed as a witness when in fact he did not witness the execution of either will.

---

[2]The matter was not heard by the Union County Ethics Committee because one of its members was a present law partner of respondent Kraus.

It is unnecessary to resolve the factual issue. We are satisfied that in view of the conflicting testimony, the doubt cast on the veracity of the Yarusis' testimony by virtue of other pre-February 1972 documents bearing Kraus' attesting signature and the possible motive the Yarusis could have had for fabrication, the ethical violations charged to respondents in connection with their attesting to the execution of the Yarusis' wills were not established by clear and convincing evidence. See *In re Pennica*, 36 *N. J.* 401 (1962).

With regard to the changes made in the contract for the sale of the property, respondent Shear testified that a meeting was scheduled for November 12, 1971 at his office with Mr. Yarusi and the attorney for and officers of the savings and loan association to discuss the proposed changes. When Yarusi failed to appear at the meeting, Shear, in the presence of the other persons present, telephoned Yarusi at his place of business, discussed the proposed changes and got approval from Yarusi to make them in the contract. The fact of the meeting and the substance of the telephone conversation were corroborated by all of the others present in Shear's office at the time.

A majority of the Ethics Committee found that Mr. Yarusi was not advised of the meeting but that even if he were, and did speak with Shear by telephone, the complexity and materiality of the proposed changes in the contract were such that, in the circumstances, Shear did not obtain the informed consent of his clients to such changes.

We agree with the Committee that the handling of this matter was unprofessional. The Yarusis were not asked to initial the changes in the written instrument. Such changes were never confirmed by letter or other writing, nor were copies of the revised contract and attachments sent to the Yarusis.

It is undisputed that the Yarusis were subjected to aggravation and unnecessary delay in this matter. The ap-

plications for a subdivision and for site plan approval ran into difficulties which were not solved until August 1972. Shortly thereafter the Yarusis had a falling out with respondents and retained other counsel. They were also being sued for specific performance by the savings and loan association.

However, we do not find that respondents' conduct was based on fraud and deceit as charged by the Yarusis,[3] but rather due to an inability to appreciate and deal with the complexities which developed. Nevertheless, respondents are guilty of unprofessional conduct in violation of DR7-101.

After the termination of the relationship between the Yarusis and Shear and Kraus at the end of October, 1972, Capitol Savings and Loan sued the Yarusis for specific performance. This litigation was settled and we are advised that the settlement documents were exactly those as prepared by Messrs. Shear and Kraus prior to the termination of the relationship in October, 1972.

The Ethics Committee also found that respondent Kraus' position as a member of the Fanwood Planning Board, and later its attorney, created a conflict of interest and that the retention of Charles Thatcher to process the application for the subdivision did not obviate the conflict as both respondents continued to represent the Yarusis and discussed with them planning board requirements.

██ ██ This criticism is well founded. It is of no moment that the Yarusis may not have been prejudiced. An attorney-public official should not represent clients in a matter that must come before the body of which he is a member. The conflict both real and apparent is still present even though another attorney is retained to process the particular application. See, DR1-102(A)(2); DR9-101.

---

[3]The record shows that a civil suit was filed by the Yarusis against respondents, Thatcher, the savings and loan association, the Borough of Fanwood and its Planning Board, asserting fraud, deceit, misrepresentation, conspiracy and conflict of interest and additionally charging respondents with professional negligence. A trial of the matter resulted in a jury verdict of "no cause for action."

■ We come to the matter of discipline. These are the first and only ethical violations charged to respondents. They have been admitted to the bar for a number of years and enjoy a good reputation. In the circumstances, a severe reprimand is warranted and is hereby imposed.

*For reprimand*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.