352 S.E.2d 31

David GRAF, et al.

v.

Clark B. FRAME, as Regent of the West Virginia Board of Regents; and the West Virginia Board of Regents, a Public Corporation.

No. 16815.

Supreme Court of Appeals of West Virginia.

March 12, 1986.

Dissenting Opinion June 3, 1986.

Concurring Opinion Dec. 5, 1986.

Larry Harless, Morgantown, for appellant.

Clark B. Frame, Morgantown, pro se.

Bruce Ray Walker, Asst. Atty. Gen., Charleston, for the W.Va. Bd. of Regents.

McHUGH, Justice:

In this mandamus proceeding the petitioners, current (and two former) physicians [1] faculty members at the West Virginia University Medical Center, request that this Court order the respondents to perform what the petitioners allege are the nondiscretionary duties of the respondents as public officers, specifically, (1) for respondent Frame, an attorney and a member of the respondent West Virginia Board of Regents, to refrain from acting as an attorney for persons with alleged claims against faculty members and employees of West Virginia University and of other institutions of higher learning in this State when such claims are based upon functions

---

1. All of the petitioners are physicians except two who are oral surgeons and one who is a doctor of psychology.

performed by such faculty members/employees in their course of employment with any such institution supervised by the respondent West Virginia Board of Regents and (2) for respondent West Virginia Board of Regents to prohibit respondent Frame and any other of the Board's members from representing litigants against the Board or institutions or employees thereof which it supervises. The petitioners also request that they be awarded costs and reasonable attorney fees associated with bringing (1) this mandamus proceeding and (2) an unsuccessful malicious prosecution case of Dr. Graf, one of the petitioners, against respondent Frame and his law firm associate.

Finding merit to the argument for mandamus relief with respect to respondent Frame,[2] we grant a writ of mandamus as moulded.

I

Clark Frame, an attorney and a member of the West Virginia Board of Regents, in his capacity as attorney brought a medical malpractice action for a Ms. Riggi against Drs. Blessing and Elyanderani, formerly physicians at the West Virginia University (WVU) Medical Center hospital, where the alleged medical malpractice occurred, and formerly faculty members at the WVU School of Medicine. This civil action is currently pending, with Frame and one of his law firm's associates as counsel of record for the plaintiff. Neither West Virginia University nor the West Virginia Board of Regents is named as a defendant.

In a second case, one of Frame's associates brought a medical malpractice action for a Mr. and Mrs. Roy against Drs. Graf and Davis. Dr. Graf was then, and is now, a physician at the WVU Medical Center hospital, where the alleged medical malpractice occurred, and a faculty member of the WVU School of Medicine. This civil action was later dismissed with prejudice by agreed order. Neither West Virginia University nor the West Virginia Board of Regents was named as a defendant.

On the same date that this case was dismissed, the Roys were dismissed by agreed order from a malicious prosecution case which had been brought by Dr. Graf against the Roys and Frame's associate. Clark Frame was thereafter added as a defendant to Dr. Graf's malicious prosecution case. The latter was tried and the jury's verdict was in favor of the defendants (the Frames). Dr. Graf incurred $5,750.00 in costs and attorney fees in his unsuccessful malicious prosecution action.

In this mandamus proceeding the petitioners assert that respondent Frame, by placing himself in the situations involving actual or apparent conflict of interests between personal gain and public duties, has violated and is violating *W.Va. Const.* art. III, §§ 2, 3, 10 and 17[3]; art. VI, § 45[4];

2. Having concluded that respondent Frame owes the duty asserted by the petitioners, we find it is not necessary to reach the question of whether the respondent Board owes the duty asserted by the petitioners.

3. *W.Va. Const.* art. III, §§ 2, 3, 10, and 17 provide as follows:

§ 2. All power is vested in, and consequently derived from, the people. Magistrates are their trustees and servants, and at all times amenable to them.

§ 3. Government is instituted for the common benefit, protection and security of the people, nation or community. Of all its various forms that is the best, which is capable of producing the greatest degree of happiness and safety, and is most effectually secured against the danger of maladministration; and when any government shall be found inade-

quate or contrary to these purposes, a majority of the community has an indubitable, inalienable, and indefeasible right to reform, alter or abolish it in such manner as shall be judged most conducive to the public weal.

§ 10. No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.

§ 17. The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay.

4. *W.Va. Const.* art. VI, § 45 provides:

It shall be the duty of the legislature, at its first session after the adoption of this Constitution, to provide, by law, for the punishment by imprisonment in the penitentiary, of any

art. XII, § 12 [5]; and DR–1–102(A)(5), DR–5–105(A), DR–8–101(A)(2) and DR–9–101(A), (B) and (C) of the *Code of Professional Responsibility* (1983).[6] We conclude that respondent Frame, unwittingly, has violated and is violating *W. Va. Const.* art. III, § 2. It is, therefore, not necessary to discuss the other state constitutional provisions or, with one exception (DR 9–101), the disciplinary rules listed above.

## II

### A.

At the outset this Court notes again the well settled law on the requirements for the granting of mandamus relief:

'A writ of mandamus will not issue unless three elements coexist—(1) a clear [legal] right in the petitioner to the relief sought; (2) a [clear] legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W. Va. 538, 170 S.E.2d 367 (1969).

Syl., *Oakley v. Gainer,* 175 W.Va. 115, 331 S.E.2d 846 (1985). *See also* syl. pt. 1, *American Federation of State, County & Municipal Employees v. Civil Service Commission,* 176 W.Va. 73, 341 S.E.2d 693 (1985); syl., *State ex rel. Ruddlesden v. Roberts,* 175 W.Va. 161, 332 S.E.2d 122 (1985); syl. pt. 1, *West Virginia Citizens Action Group, Inc. v. Daley,* 174 W.Va. 299, 324 S.E.2d 713 (1984); syl. pt. 1, *Jawa v. Board of Education,* 174 W.Va. 200, 324 S.E.2d 161 (1984); syl. pt. 1, *Allen v. State Human Rights Commission,* 174 W.Va. 139, 324 S.E.2d 99 (1984) (and cases collected at 105 n. 3); syl. pt. 2, *Wheeling Barber College v. Roush,* 174 W.Va. 43, 321 S.E.2d

5. *W. Va. Const.* art. XII, § 12 provides: "The legislature shall foster and encourage, moral, intellectual, scientific and agricultural improvement; it shall, whenever it may be practicable, make suitable provision for the blind, mute and insane, and for the organization of such institutions of learning as the best interests of general education in the State may demand."

person who shall bribe, or attempt to bribe, any executive or judicial officer of this State, or any member of the legislature in order to influence him, in the performance of any of his official or public duties; and also to provide by law for the punishment by imprisonment in the penitentiary of any of said officers, or any member of the legislature, who shall demand, or receive, from any corporation, company or person, any money, testimonial, or other valuable thing, for the performance of his official or public duties, or for refusing or failing to perform the same, or for any vote or influence a member of the legislature may give or withhold as such member; and also to provide by law for compelling any person, so bribing or attempting to bribe, or so demanding or receiving a bribe, fee, reward, or testimonial, to testify against any person or persons, who may have committed any of said offences; provided, that any person so compelled to testify, shall be exempted from trial and punishment for the offence of which he may have been guilty, and concerning which he is compelled to testify; and any person convicted of any of the offences specified in this section, shall, as a part of the punishment thereof, be forever disqualified from holding any office or position of honor, trust, or profit in this State.

6. These disciplinary rules read as follows:

DR 1–102 Misconduct.—(A) A lawyer shall not:

. . . .

(5) Engage in conduct that is prejudicial to the administration of justice.

DR 5–105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.—(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

DR 8–101 Action as a Public Official—(A) A lawyer who holds public office shall not:

. . . .

(2) Use his public position to influence, or attempt to influence, a tribunal to act in favor of himself or of a client.

DR 9–101 Avoiding Even the Appearance of Impropriety.—(A) A lawyer shall not accept private employment in a matter upon the merits of which he has acted in a judicial capacity.

(B) A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

(C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official.

694 (1984); syl. pt. 1, *Woodruff v. Board of Trustees*, 173 W.Va. 604, 319 S.E.2d 372 (1984); syl. pt. 1, *Reed v. Hansbarger*, 173 W.Va. 258, 314 S.E.2d 616 (1984) (and cases collected at 619–20).

It is also well established in this jurisdiction that " '[a] peremptory writ of mandamus will issue to require the discharge by a public official of a non-discretionary duty.' Syl. pt. 4, *Glover v. Sims*, 121 W. Va. 407, 3 S.E.2d 612 (1939)." Syl. pt. 3, *Allen v. State Human Rights Commission*, 174 W.Va. 139, 324 S.E.2d 99 (1984). *See also* syl. pt. 2, *American Federation of State, County & Municipal Employees v. Civil Service Commission*, 176 W.Va. 73, 341 S.E.2d 693 (1985); *State ex rel. Taylor v. MacQueen*, 174 W.Va. 77, 322 S.E.2d 709 (1984); syl. pt. 2, *Reed v. Hansbarger*, 173 W.Va. 258, 314 S.E.2d 616 (1984) (and cases collected at 620).

### B.

The *Constitution of West Virginia* is the source of the nondiscretionary duty owed by respondent Frame. Indeed, *W.Va.Const.* art. III, § 20 urges the people to preserve free government and the blessings of liberty by, *inter alia,* "a frequent recurrence to fundamental principles."

One of these "fundamental principles" is declared in *W.Va. Const.* art. III, § 2, quoted at n. 3, *supra.* This constitutional provision, part of this State's "Bill of Rights," is obviously derived from and tracks verbatim the language of Section 2 of the Virginia "Bill of Rights" composed by George Mason in the year 1776. *See The Constitution Of Virginia: Report of the Commission on Constitutional Revision* 87–88 (Michie Co. 1969). The respondents clearly are "magistrates" under this provision. In *Mason County Board of Education v. State Supt. of Schools*, 165 W.Va. 732, 274 S.E.2d 435 (1980), this Court stated that *W.Va. Const.* art. III, § 2 applied to "all officers and employees of the body politic in this State." 165 W.Va. at 739, 274 S.E.2d at 439. *See generally Ralston v. Town of Weston*, 46 W.Va. 544, 548–49, 33 S.E. 326, 328 (1899) ("public servants" equated with "magistrates"). It is clear that respondent Frame in his capacity as a member of the respondent Board is a "public officer." There are several indicia of being a "public officer":

'Among the criteria to be considered in determining whether a position is an office or a mere employment are whether the position was created by law; whether the position was designated [as] an office; whether the qualifications of the appointee have been prescribed; whether the duties, tenure, salary, bond and oath have been prescribed or required; and whether the one occupying the position has been constituted a representative of the sovereign.' Syl. pt. 5, *State ex rel. Carson v. Wood*, 154 W.Va. 397, 175 S.E.2d 482 (1970).

Syl., *Christopher v. City of Fairmont*, 167 W.Va. 710, 280 S.E.2d 284 (1981). *See also Mullins v. Kiser*, 175 W.Va. 56, 331 S.E.2d 494 (1985). Applying these criteria we see that respondent Frame's position as a member of respondent Board of Regents was a position created by law, specifically, *W.Va. Code,* 18–26–4 [1983]; the position is implicitly designated as an office in *W.Va.Code,* 18–26–4 [1983] by that section's language prohibiting a member from "holding any *other* public office" (emphasis added); the qualifications of the members of the Board are prescribed by such section; the same section of the statute prescribes the tenure of a member and requires each member to take the oath of office prescribed by *W.Va. Const.* art. IV, § 5, while *W.Va.Code,* 18–26–6 [1983] and *W.Va.Code,* 18–26–8 [1981], respectively, prescribe the compensation and duties of the members; finally, *W.Va.Code,* 18–26–1 [1969] constitutes a designation of the Board as a general manager of the State's higher educational institutions and affairs, a position which is a representative of the sovereign, the people, who are vitally interested in the fostering of higher education in this State. *See W.Va. Const.* art. XII, § 12, quoted at n. 5, *supra.*

### C.

According to *W.Va. Const.* art. III, § 2 "magistrates" are "trustees and servants" of the people of this State and are "at all

times amenable to them." Being "trustees and servants," public officials such as respondent Frame are fiduciaries of the people. Referring to article 6 of the "Declaration of Rights" contained in the *Constitution of Maryland,* which states in pertinent part "[t]hat all persons invested with the Legislative or Executive powers of Government are the Trustees of the Public, and, as such, accountable for their conduct[,]" the court in *Kerpelman v. Board of Public Works,* 261 Md. 436, 276 A.2d 56 (1971), *cert. denied,* 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 100 (1971), observed: "Article 6 is hortatory in nature ... and sets forth the well-established doctrine that the duties of public officials are fiduciary in character and are to be exercised as a public trust." 261 Md. at 444–45, 276 A.2d at 61. *See also United States v. Mandel,* 591 F.2d 1347, 1363 (4th Cir.1979), *aff'd by en banc court,* 602 F.2d 653 (4th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

■ As a fiduciary of the people a public officer or public employee owes an undivided duty of loyalty to the public whom he serves and is not permitted to place himself in a situation that will subject him to conflicting duties or expose him to the temptation of acting in any manner other than in the best interest of the public. *Anderson v. Zoning Commission,* 157 Conn. 285, 290, 253 A.2d 16, 19 (1968). This Court has stated the proposition in this manner: "A public officer is in the position of a fiduciary and he is under an obligation to serve the public with highest fidelity and undivided loyalty. [citation omitted] The public officer is bound to act primarily for the benefit of the public...." *State ex rel. Preissler v. Dostert,* 163 W.Va. 719, 730, 260 S.E.2d 279, 286 (1979). Similarly, "[t]he duty of a public officer to fulfill the obligations of his office should take precedence over all other matters." *Kemp v. Boyd,* 166 W.Va. 471, 477, 275 S.E.2d 297, 302 (1981). A person's status as a public officer forbids him from placing himself in a situation where his private interest conflicts with his public duty. His good faith is of no moment because it is the policy of the law to keep him so far from temptation as to insure the exercise of unselfish public interest. This policy is not limited to a single category of public officer but applies to all public officials. *Housing Authority v. Dorsey,* 164 Conn. 247, 251, 320 A.2d 820, 822 (1973), *cert. denied,* 414 U.S. 1043, 94 S.Ct. 548, 38 L.Ed.2d 335 (1973).

■ Quoting *State ex rel. Preissler v. Dostert,* 163 W.Va. 719, 730, 260 S.E.2d 279, 286 (1979), this Court in *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982), remarked:

> 'One who accepts a public office does so *cum onere,* that is, he assumes the burdens and [the] obligations of the office as well as its benefits, subjects himself to all constitutional and legislative provisions relating to the office, and undertakes to perform all [the] duties imposed on its occupant; and while he remains in such office he must perform all such duties.'

171 W.Va. at 449, 300 S.E.2d at 90. One of the obligations of the office held by respondent Frame which is imposed by *W.Va. Const.* art. III, § 2 is that a public trustee is not to place himself in a situation where his private interest conflicts with his public duty:

> *All* public officers, within whatever branch and at whatever level of our government, and whatever be their private vocations, are trustees of the people, and do accordingly labor under every disability and prohibition imposed by law upon trustees relative to the making of personal financial gain from the discharge of their trusts. (emphasis in original)

*Georgia Department of Human Resources v. Sistrunk,* 249 Ga. 543, 547, 291 S.E.2d 524, 528 (1982). The Georgia court applied a 1976 state constitutional provision stating: "Public officers are the trustees and servants of the people, and at all times, amenable to them." The court held that this constitutional provision imposes a "positive prohibition" to avoid the collision of personal and public interests. 249 Ga. at 547, 291 S.E.2d at 528.

*Sistrunk* was followed by *Stephenson v. Benton*, 250 Ga. 726, 300 S.E.2d 803 (1983). In that case the court held that the same constitutional provision involved in *Sistrunk* prohibited a city recorder, a public officer, who was also an attorney, from bringing actions against other officials of the city. We find this precedent to be very persuasive in deciding this case involving very similar facts.

A public officer must not place himself in a situation of temptation to serve his own purposes, to the prejudice of those for whom the law authorizes him to act. *See Schumacher v. City of Bozeman*, 174 Mont. 519, 529, 571 P.2d 1135, 1141 (1977). A public officer may not lawfully act as the agent of one person where the private agency would come in conflict with his official duties. *State ex rel. Bell v. McCullough*, 85 Mont. 435, 438, 279 P. 246, 247 (1929). A contract entered into by a public officer in his individual capacity, the effect of which is to create a personal interest which may conflict with the officer's public duty, is contrary to public policy. Such a contract is invalid even though there may have been no actual loss or detriment to the public nor fraudulent intent in entering into the contract. *Warren v. Reed*, 231 Ark. 714, 717, 331 S.W.2d 847, 849 (1960).

Respondent Frame has violated these principles, although his good faith appears to be beyond question. The respondent Board of Regents, of which he is a member, is charged with the responsibility of "determin[ing], control[ling], supervis[ing] and manag[ing] the financial, business and educational policies and affairs of the state colleges and universities[,]" *W.Va.Code*, 18–26–8(a)(1) [1981], including West Virginia University, *W.Va.Code*, 18–26–2(d) [1982]. In addition, under *W.Va.Code*, 18–26–8c [1979], the Board, by a committee thereof or a hearing examiner appointed thereby, is authorized to hear and decide appeals of probationary faculty members who have been denied tenure by their institutions.[7] For respondent Frame, or an associate or partner in his law firm, to represent clients in his practice of law against employees of institutions supervised by the public body of which he is a member is tantamount to his bringing lawsuits against the public body on which he serves[8] and is, in any event, prejudicial to the interests of those for whom the law authorizes him, as a member of the respondent Board, to act, specifically, state institutions of higher education. Respondent Frame's private agency (representation of clients) conflicts or would conflict with his public duties (to oversee higher education in this State, including ruling on appeals by probationary faculty members who have been denied tenure and whom he has sued on behalf of clients).[9]

An attorney who is a public official is held to a high standard of conduct because of his or her (1) professional and (2) public trustee responsibilities. *See Nagy v. Oakley*, 172 W.Va. 569, ——, 309 S.E.2d 68, 71

---

7. We note that under *W.Va.Code*, 18–11C–1, *et seq.* [1984], the West Virginia Board of Regents has been authorized to enter into an agreement with a nonstock, not-for-profit corporation for the latter to operate the West Virginia University hospital. Under *W.Va.Code*, 18–11C–6 [1984], a member of the Board of Regents may be appointed to serve simultaneously as such a member and as a director, officer or employee of the corporation operating the West Virginia University hospital, subject to termination of appointment to avoid an actual or potential conflict of interest.

We also note that under *W.Va.Code*, 18–29–1, *et seq.*, effective July 1, 1985, there is an alternative grievance procedure available to education employees, including faculty of state institutions of higher education.

8. The failure of respondent Frame or his law firm to name the West Virginia Board of Regents as a defendant in the two medical malpractice actions herein is, apparently, in recognition of the patent conflict which would have resulted therefrom. Contrast this failure to name the Board with the action against the Board in, for example, *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983), involving personal injuries sustained by a child who had fallen from a theater stage in the Creative Arts Center at West Virginia University.

9. This Court notes that *W.Va.Code*, 18–11C–6 [1984] requires Board members to file conflict of interest statements, similar to conflict of interest statements required of state government personnel in general by *W.Va.Code*, 6B–1–1, *et seq.* [1968].

n. 2 (1983). "Members of the bar are not well loved in our society. Lawyer insensitivity to ethical impropriety [or perceived ethical impropriety] is one of the primary sources of this lack of public confidence in the Bar. The problem is exacerbated when ethical violations are committed by an attorney holding an important public office." *Sanders v. Mississippi State Bar Association*, 466 So.2d 891, 893 (Miss.1985). In the case now before us, respondent Frame, an attorney holding an important public office (member of the Board of Regents), has a professional obligation to avoid even the appearance of impropriety. DR 9–101. The courts have applied DR 9–101(B), quoted at n. 6 *supra*, to disqualify a lawyer who maintains a private practice while serving as a public officer or public employee. In *Bachman v. Pertschuk*, 437 F.Supp. 973 (D.D.C.1977), the court held that an attorney may not represent private parties in litigation against the federal administrative agency which is the attorney's employer. Such representation would violate the ethical proscription against the appearance of impropriety and would likely violate the federal statute, 18 U.S.C. § 205 (1982), proscribing such representation. 437 F.Supp. at 976. In *In re Shear*, 72 N.J. 474, 371 A.2d 282 (1977), the court, citing the Canon 9 maxim against the appearance of impropriety, held that an attorney who is a public official (or another attorney with the same law firm) should not represent clients in a matter which must come before the public body of which he is a member. Moreover, where the public interest is involved, an attorney may not represent conflicting interests even with the consent of all concerned. *See State v. Galati*, 64 N.J. 572, 578, 319 A.2d 220, 223 (1974).

It is essential that the public have absolute confidence in the integrity and impartiality of our system of justice. This requires that attorneys who are public officials not only in fact properly discharge their responsibilities but also that they avoid, as much as is possible, the appearance of impropriety. *People v. Rhodes*, 12 Cal.3d 180, 185, 115 Cal.Rptr. 235, 239, 524 P.2d 363, 367 (1974). Disqualifying an attorney from representing a client is, of course, inimical to the client's right to counsel of his or her choice. The right of a person to retain counsel of his or her choice is not, however, absolute, and there may be other values of substantial importance which may also demand recognition. One such value is the preservation of public confidence in the integrity and impartiality of our system of justice, and here, in the underlying civil cases, it should prevail. *See People v. Municipal Court (Wolfe)*, 69 Cal.App.3d 714, 719–20, 138 Cal.Rptr. 235, 238 (1977), *disapproved on other grounds, Maxwell v. Superior Court*, 30 Cal.3d 606, 619, 180 Cal.Rptr. 177, 185, 639 P.2d 248, 256 (1982).[10] Thus, to avoid even the appearance of impropriety, an attorney member of the Board of Regents should refrain from representing persons against the Board or institutions (or employees thereof) supervised by the Board.

■ Based upon all of the above, we hold that *W.Va. Const.* art. III, § 2 imposes a duty upon a public officer who is an attorney to refrain from representing persons who allegedly have claims against the public agency of which he is a member or against those agencies or employees thereof subject to the supervision of the public agency of which he is a member.

### D.

Mandamus lies, therefore, with respect to respondent Frame. He owes to the petitioners the duty sought to be enforced by them and there is no adequate remedy at law. " 'Mandamus will not be denied on the ground that there is another remedy

---

**10.** Query: what would be the position of an attorney member of the Board of Regents, for example, on whether policy limits should be reduced on state-purchased liability insurance coverage for West Virginia University professors/physicians? *See W.Va.Code,* 29–12–6(a) [1957]; *W.Va.Code,* 18–11C–4(a) [1984]. Would he represent his own and his private clients' pocketbooks or the public purse? The clients would not be interested in such a reduction but the citizens of this State may be. "Whenever a person represents another against his present employer, the possibility exists that he may violate the duty of loyalty that he owes to each." *Bachman v. Pertschuk,* 437 F.Supp. 973, 975 (D.D.C.1977).

unless such other remedy is equally convenient, beneficial, and effective.'" *West Virginia Citizens Action Group, Inc. v. Daley,* 174 W.Va. 299, 302, 324 S.E.2d 713, 716 (1984) (citation omitted). There is no such other remedy. Clearly, an *ad hoc* ruling by a trial court on an asserted conflict of interest in each case would entail unnecessary repetition. "When the administrative officer and his petitioners disagree on the entire legal philosophy of his duties, piecemeal litigation of pigeonholed issues will not serve to resolve their basic differences; it is in this circumstance that mandamus should lie." *Walls v. Miller,* 162 W.Va. 563, 566 n. 5, 251 S.E.2d 491, 495 n. 5 (1978).

### III

■ The petitioners request an award of costs and reasonable attorney fees associated with this proceeding and with an unsuccessful malicious prosecution case of Dr. Graf, one of the petitioners, against respondent Frame and an associate in his law firm.

"It is settled that in mandamus proceedings where a public officer willfully fails to obey the law, costs will be awarded." Syl. pt. 3, *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982). "In mandamus proceedings where a public officer willfully fails to obey the law, [reasonable] attorney fees will be awarded." Syl. pt. 4, *id. See also Hechler v. Casey,* 175 W.Va. 434, 449, 333 S.E.2d 799, 815 (1985). In the case now before us, however, the mandamus relief is granted based upon a duty to which this Court has not heretofore spoken in detail and with respect to which duty respondent Frame appears to have endeavored to comply in good faith on a case by case basis. "Ordinarily, in mandamus proceedings, costs [and reasonable attorney fees] will not be awarded against a public officer who is honestly and in good faith endeavoring to perform his duty as he conceives it to be." *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 450, 300 S.E.2d 86, 91 (1982). Accord-

ingly, we decline to award costs and reasonable attorney fees in this case.

For the foregoing reasons we grant the writ of mandamus as moulded.

Writ granted as moulded.

NEELY, Justice, dissenting:

The majority opinion imagines that lawyers must crawl into a cocoon whenever they accept a *pro bono* public office. In erecting this vision of public service, the majority ignores the institutional realities of our state. The West Virginia University system does not need a full-time board of regents. Accordingly, the members of the board of regents are employed on an unpaid, part-time basis. An unpaid citizen board allows the state to draw upon the talents of our leaders in medicine, business, education and law. Obviously, however, these high quality volunteers must be allowed to earn a living.

The majority suggests that Attorney Frame has violated the *Code of Professional Responsibility,* D.R. 9–101(B) which states:

(B) A lawyer shall not accept private employment in a matter in which he had *substantial responsibility* while he was a public employee. [Emphasis supplied]

They suggest that suing Dr. Graf is tantamount to suing the board of regents itself. In short, the majority opinion begs the question whether Mr. Frame had "substantial responsibility" over the day-to-day operation of the West Virginia University Medical Center.

But an examination of Mr. Frame's duties as a Regent under *W.Va.Code* 18–26–8 [1981] reveals that he had no substantial responsibility over the matter in which he accepted employment. To support their position the majority cite *Bachman v. Pertschuk,* 437 F.Supp. 973 (D.D.C.1977) (where the Court prohibited an attorney employed by the FTC from suing the FTC); *Matter of Shear,* 72 N.J. 474, 371 A.2d 282 (1977) (where the court held that an attorney-public official should not represent clients in a matter that must come before the body of which he is a member). The present case does not fall into either pattern. At-

torney Frame is not suing the board of regents. Nor is he representing someone in a matter that will come before the board of regents. The "substantial responsibility" language in D.R. 9–101(B) is not gratuitous. Rather it was designed to limit the purview of D.R. 9–101(B) so that cases where a potential conflict of interest is *de minimis* would not be affected. "The great majority of courts interpreting this rule have concluded 'substantial responsibility' refers to actual rather than theoretical conduct." *Cleary v. District Court,* 704 P.2d 866, 870 (1985) *citing State v. Borg, Inc.,* F.Supp. 178 (N.D.Ill.1982); *Kadish v. Commodity Futures Trading Commission,* 548 F.Supp. 1030 (N.D.Ill. 1982); *In Re Asbestos Cases,* 514 F.Supp. 914 (E.D.Va.1981); *International Union, United Automobile Aerospace and Agricultural Implement Workers of America (UAW) v. National Caucus of Labor Committees,* 466 F.Supp. 564 (S.D.N.Y.), *aff'd* 607 F.2d 996 (2d Cir.1979).

ABA Formal Opinion 342, which reviews the origins, purposes and contemporary applications of DR 9–101(B), concludes that the prohibition against a government official's involving himself in potentially improper employment requires some degree of personal involvement in the matter in question. *Formal Op.* 342 at 118. The conclusion seems reasonable when one considers that DR 9–101(B) requires substantial responsibility *"in"* some matter, rather than substantial responsibility *"for"* some matter. The ABA states:

> As used in DR 9–101(B), "substantial responsibility" envisages a much closer and more direct relationship than that of a mere perfunctory approval or disapproval of the matter in question. *It contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question. Thus, being the chief official in some vast office or organization does not ipso facto give that governmental official or employee the "substantial responsibility" contemplated by the rule in regard to all the minutiae of facts lodged within that office.* [Emphasis supplied]

There is no proof or even allegation that Mr. Frame had any "substantial responsibility" in supervising Dr. Graf's medical practice. Accordingly, DR 9–101(B) should not act as a bar to Mr. Frame's representing Mr. and Mrs. Roy in their malpractice action against Dr. Graf.

Because I believe that any connection between Attorney Frame's duties as a member of the Board of Regents and his duties as an attorney for Mr. and Mrs. Roy is completely tenuous, I cannot see how he has violated D.R. 9–101(B) or any other disciplinary rule or ethical consideration of the *Code of Professional Responsibility.* Finally, I note that if we erect conflict of interest rules so broad, so overreaching, and so perverse, we risk discouraging men of considerable talents from assuming part-time public offices.

Mr. Frame has a reputation at the bar for being one of this State's finest lawyers; his service on the board of regents was undertaken, if not at great sacrifice, at least at significant opportunity cost. He brought to the State for free the skill and ability of a "high-priced" lawyer—a contribution that should not be minimized when it is recognized that the State's low salaries usually attract only young and inexperienced lawyers to its professional service. Although Mr. Frame probably did not perform routine legal tasks for the board, he was capable of determining whether routine legal tasks were being performed competently, and he was able to give advice and guidance to the lawyers employed by the State who were doing such routine work.

If carried to its logical conclusion, the majority's opinion today is likely to lead us one more step down the road to mediocrity. Are, for example, lawyer members of the legislature prohibited from bringing federal civil rights cases against public officials? Are lawyer members of county commissions prohibited from representing litigants in will contests simply because wills are initially probated before county clerks? It is already difficult enough to get trained

lawyers to serve in a host of unpaid, community service positions without designing rules that actually punish lawyers for such voluntary service. Substantial conflicts of interest must, of course, be avoided, but it is not in society's interest to create conflicts—as in this case—where none actually exist.

I am authorized to say that Justice BROTHERTON joins me in this dissent.

McGRAW, Justice, concurring:

I concur fully in Justice McHugh's persuasive majority opinion, and write separately only to respond to the points raised in the dissenting opinion.

Canon 9 of the Code of Professional Responsibility declares that "a lawyer should avoid even the appearance of professional impropriety." Indeed it is "the *appearance*, not the *fact* of impropriety which Canon 9 is designed to eliminate." *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1091 (3d Cir.1976)(emphasis in original). Much of the dissent's effort is aimed at showing that the respondent has not violated Disciplinary Rule 9–101 (B).

The Disciplinary Rules, however, do not provide the proper standard by which to measure the respondent's activities. "The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action," West Virginia Code of Professional Responsibility, Preliminary Statement. The majority has properly noted that the respondent, because he is both a lawyer and a public officer, is held to a high standard of conduct. The respondent is a fiduciary of the people and this Court must impose standards on his conduct which will preserve and promote public confidence in the integrity and impartiality of both our public agencies and our system of justice.